*14-3872-cr*
*United States v. Hill*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term 2015

(Argued: November 12, 2015      Decided: August 3, 2016
Amended: May 9, 2018)

No. 14-3872-cr

_____

UNITED STATES OF AMERICA,

*Appellee,*

-v.-

ELVIN HILL, A/K/A ELTON,

*Defendant-Appellant.*

_____

Before:      JACOBS, LIVINGSTON, and DRONEY, *Circuit Judges.*

Defendant-appellant Elvin Hill appeals from his judgment of conviction, dated October 3, 2014, in the United States District Court for the Eastern District of New York (Matsumoto, *J.*).   Hill was convicted of violating 18 U.S.C. § 924(j)(1), for a firearm-related murder committed in the course of a crime of violence pursuant to 18 U.S.C. § 924(c), in this case, Hobbs Act robbery, as defined in 18 U.S.C. § 1951(b)(1).   A summary order issued on August 3, 2016 addressed and rejected most of Hill's claims on appeal.   This opinion considers one of Hill's challenges to his conviction: whether Hobbs Act robbery qualifies as

a "crime of violence" under 18 U.S.C. § 924(c)(3).  We hold that it does.  We find that Hobbs Act robbery is categorically a "crime of violence" under the "force clause" of this statute, § 924(c)(3)(A).  Accordingly, the judgment of conviction is **AFFIRMED**.

FOR APPELLEE:                              DANIEL S. SILVER, Amy Busa, Seth D. DuCharme, Assistant United States Attorneys, New York, N.Y., *for* Robert L. Capers, United States Attorney for the Eastern District of New York, *for the United States of America.*

FOR DEFENDANT-APPELLANT:                   YUANCHUNG LEE, Federal Defenders of New York, New York, N.Y., *for Elvin Hill.*

DEBRA ANN LIVINGSTON, *Circuit Judge*:

In 1997, Fredy Cuenca, a livery cab driver, was robbed, shot, and killed after picking up a fare in the middle of the day in Brooklyn.  Almost 14 years later, Rhan Powell admitted he was one of the two passengers who robbed Cuenca.  He also attested that Elvin Hill was the second passenger — the one who carried the weapon and pulled the trigger.  The Government filed an indictment, charging Hill with violating 18 U.S.C. § 924(j)(1) for committing a firearm-related murder in the course of a "crime of violence," as defined in 18 U.S.C. § 924(c)(3).  In this case, the crime of violence was Hobbs Act robbery, as defined in 18 U.S.C. § 1951(b)(1).  Hill pleaded not guilty, proceeded to trial, and was convicted of the charged offense.

2

This case raises the question whether Hobbs Act robbery is a "crime of violence" within the meaning of 18 U.S.C. § 924(c)(3).[1]  Hill argues that Hobbs Act robbery does not qualify categorically as a crime of violence under the statute's "force clause," § 924(c)(3)(A), because it can be committed without physical force or the threatened deployment of the same.

We reject this argument and hold that Hobbs Act robbery is a crime of violence under 18 U.S.C. § 924(c)(3)(A).[2]  Accordingly, we affirm the district court's judgment of conviction.

---

[1]  Hill brings a number of additional claims on appeal, which we addressed in a summary order issued on August 3, 2016.

[2] Hill also contends that Hobbs Act robbery cannot qualify as a crime of violence under the "risk-of-force clause," § 924(c)(3)(B), because the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (*Johnson II*) (2015), effectively rendered that clause unconstitutionally vague.  Having held, independently, that Hobbs Act robbery is a crime of violence under the statute's "force clause," 18 U.S.C. § 924(c)(3)(A), we proceed no further and express no view as to whether the "risk-of-force" clause, § 924(c)(3)(B), is void for vagueness as applied to Hobbs Act robbery.  *See Sessions v. Dimaya*, 138 S. Ct. 1204, 1241 (2018) (Roberts, *C.J.*, dissenting) ("express[ing] no view" as to whether the Supreme Court's *Dimaya* holding that 18 U.S.C. § 16(b), a similarly worded provision, is impermissibly vague compels the same result regarding 18 U.S.C. § 924(c)(3)(B)).

Fredy Cuenca was a livery cab driver in New York City. One afternoon, on June 29, 1997, he received a call from his dispatcher requesting a pickup in the Bushwick neighborhood of Brooklyn. Two young men, Elvin Hill and Rhan Powell, entered Cuenca's cab. According to Powell, as they were reaching the destination, Cuenca quoted the fare price, $10, which was higher than Hill and Powell had anticipated. Powell suggested to Hill that they rob Cuenca. When Cuenca stopped the cab, Hill yelled out, "[g]ive me the fucking money." Joint App'x 295. Cuenca handed some money he had in his hand to Powell. As Powell was exiting the vehicle, Cuenca began to plead for his life in broken English, pointing to a photograph of his children on the dashboard. Outside the vehicle, Powell then heard a loud sound and saw "red on the windshield." *Id.* at 296. Hill had shot Cuenca — once, in the head — with a previously concealed handgun. Hill and Powell fled the scene. Cuenca died.

Several witnesses heard the fatal gunshot and saw two young men exiting the cab and fleeing the scene. One witness identified Hill as one of the

---

[3] The factual background presented here is derived from the testimony and evidence presented at Hill's trial.

assailants during a lineup conducted about two months after the crime.[4]   But

Hill was not charged with the crime at that time.   Rather, the indictment came

nearly 15 years later.

On April 26, 2011, Powell testified before a grand jury in the Eastern

District of New York and admitted that he was one of the two passengers

involved in the 1997 robbery.   He testified that Hill was the one who had killed

Cuenca.   On March 22, 2012, another federal grand jury, relying in part on

Powell's 2011 testimony, returned an indictment against Hill.   Therein, Hill was

charged with violating 18 U.S.C. § 924(j)(1), for committing a firearms-related

murder in the course of a "crime of violence," as defined in 18 U.S.C. § 924(c)(3).

The alleged predicate crime of violence was Hobbs Act robbery, as defined in 18

U.S.C. § 1951(b)(1).

Hill pleaded not guilty and proceeded to trial in the United States District

Court for the Eastern District of New York (Matsumoto, *J.*).   On January 24,

2014, the jury returned a guilty verdict.   The district court sentenced Hill to 43

---

[4] Hill challenges the identification evidence from the lineup, a challenge we determined to be without merit in the summary order published on August 3, 2016.

years' imprisonment and entered a judgment of conviction dated October 3, 2014. This appeal followed.

## DISCUSSION

This opinion addresses one of Hill's claims on appeal: whether Hobbs Act robbery is a "crime of violence" within the meaning of 18 U.S.C. § 924(c)(3). Hill argues that Hobbs Act robbery does not qualify as a crime of violence because it fails to categorically constitute a crime of violence under the statute's "force clause," § 924(c)(3)(A). We reject this contention.

## I

We begin with the interlocking statutory provisions involved in this appeal. Hill was indicted and convicted under 18 U.S.C. § 924(j)(1). This provision specifies as follows:

> A person who, in the course of a violation of subsection (c), causes the death of a person through the use of a firearm, shall[,] . . . if the killing is a murder (as defined in section 1111), be punished by death or by imprisonment for any term of years or for life . . . .

Section 924(c)(1)(A) in turn explains that "any person who, during and in relation to any crime of violence . . . , uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm" violates subsection (c).

Critically, subsection (c) defines the term "crime of violence" as "an offense that is a felony" and

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). We refer to § 924(c)(3)(A) as the "force clause" and § 924(c)(3)(B) as the "risk-of-force clause."[5]

The "crime of violence" alleged in Hill's indictment was Hobbs Act robbery, in violation of 18 U.S.C. § 1951. Section 1951(a) penalizes a person who "in any way or degree obstructs, delays, or affects commerce . . . by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section." And § 1951(b)(1) defines "robbery" to mean

> the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate

---

[5] The parties' briefs refer to § 924(c)(3)(B) as the "residual clause." We think the shorthand "risk-of-force clause" is clearer and thus adopt that terminology.

or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

Taking these statutes together, the jury found that Hill used a firearm to commit a Hobbs Act robbery — pursuant to the Government's theory, a "crime of violence" under the firearm statute — and, in the course of that robbery, he murdered Cuenca in violation of § 924(j)(1).

## II

### A

On appeal, we consider Hill's claim that Hobbs Act robbery categorically fails to constitute a crime of violence under the force clause. To determine whether an offense is a crime of violence, courts employ what has come to be known as the "categorical approach." *Taylor v. United States*, 495 U.S. 575, 600 (1990); *see also Mathis v. United States*, 136 S. Ct. 2243, 2248–49 (2016) (outlining the categorical approach); *Descamps v. United States*, 570 U.S. 254, 257 (2013) (same); *United States v. Acosta*, 470 F.3d 132, 135 (2d Cir. 2006) (per curiam) (applying the categorical approach to determine whether a predicate crime was a "crime of violence" under § 924(c)). We have explained that the categorical approach is "'not only consistent with both precedent and sound policy' but[]

also . . . 'necessary in view of the language of the applicable statutes.'"

*Vargas-Sarmiento v. U.S. Dep't of Justice*, 448 F.3d 159, 167 (2d Cir. 2006) (quoting

*Jobson v. Ashcroft*, 326 F.3d 367, 372 (2d Cir. 2003)).   The categorical approach

guides our analysis here.[6]

Under the categorical approach, courts identify "the minimum criminal

conduct necessary for conviction under a particular statute."   *Acosta*, 470 F.3d at

135.   In doing so, courts "'look only to the statutory definitions' — *i.e.*, the

elements — of [the] . . . offense[], and *not* 'to the particular [underlying] facts.'"

*Descamps*, 570 U.S. at 261 (quoting *Taylor*, 495 U.S. at 600); *see also Acosta*, 470 F.3d

at 135 ("[W]e focus on the intrinsic nature of the offense rather than on the

circumstances of the particular crime.").   The reviewing court "cannot go

---

[6] Hill does not contest that the Hobbs Act is a divisible statute, and that Hill was charged with Hobbs Act *robbery* (as opposed to, say, Hobbs Act extortion).   A divisible statute "sets out one or more elements of the offense in the alternative."   *Descamps*, 570 U.S. at 257; *see also Vargas-Sarmiento*, 448 F.3d at 167 (explaining how to identify divisible penal statutes).   If some but not all of the alternative elements would amount to a crime of violence, a court can "modify" the categorical approach by looking at a limited set of documents, including the indictment, to consider under which portion of the statute the defendant was charged.   *See Descamps*, 570 U.S. at 261–63.   After determining which portion was at issue, a court then applies the categorical approach to that part of the challenged statute.   *Id.*   Hill agrees that the Hobbs Act is divisible, but argues that Hobbs Act *robbery* is not, and the Government does not contest this assertion.   *See* Hill Supp. Br. 23 n.9.   *See generally* Gov't Supp. Br. 6–16 (relying on the categorical, rather than the modified categorical, approach).   To that end, we express no view regarding whether Hobbs Act robbery is itself divisible, and we apply the standard categorical approach to the entire offense as defined in the statute.

behind the offense as it was charged to reach [its] own determination as to whether the underlying facts" qualify the offense as, in this case, a crime of violence. *Ming Lam Sui v. INS*, 250 F.3d 105, 117–18 (2d Cir. 2001) (quoting *Lewis v. INS*, 194 F.3d 539, 543 (4th Cir. 1999)). As relevant here, the categorical approach requires us to consider the minimum conduct necessary for a conviction of the predicate offense (in this case, a Hobbs Act robbery), and then to consider whether such conduct amounts to a crime of violence under § 924(c)(3)(A).

One final point remains. Critically, the Supreme Court has made clear in employing the categorical approach that to show a predicate conviction is not a crime of violence "requires more than the application of legal imagination to [the] . . . statute's language." *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). As relevant here, there must be "a realistic probability, not a theoretical possibility," that the statute at issue could be applied to conduct that does not constitute a crime of violence. *Id.* To show that a particular reading of the statute is realistic, a defendant "must at least point to his own case or other cases in which the . . . courts in fact did apply the statute in the . . . manner for which he argues." *Id.* To that end, the categorical approach must be grounded in

reality, logic, and precedent, not flights of fancy. *See Moncrieffe v. Holder*, 569 U.S. 184, 190–91 (2013) (noting that "focus on the minimum conduct criminalized by the [relevant] statute is not an invitation to apply 'legal imagination' to the . . . offense" (quoting *Duenas-Alvarez*, 549 U.S. at 193)).

**B**

Although the question whether Hobbs Act robbery constitutes a crime of violence under the force clause is a matter of first impression in our Circuit, we do not write on a blank slate but against the backdrop of a consistent line of cases from our sister circuits, concluding that Hobbs Act robbery satisfies the force clause.[7] Further, in cases involving a similarly (but not identically) worded provision of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(i), *see infra* note 8, we have recently held that the force required to

---

[7] *See, e.g.*, *United States v. Gooch*, 850 F.3d 285, 290–92 (6th Cir. 2017); *United States v. Rivera*, 847 F.3d 847, 848–49 (7th Cir. 2017); *Diaz v. United States*, 863 F.3d 781, 783–84 (8th Cir. 2017); *United States v. St. Hubert*, 883 F.3d 1319, 1328–29 (11th Cir. 2018); *see also United States v. Robinson*, 844 F.3d 137, 150–51 (3d Cir. 2016) (Fuentes, *J.*, concurring) (noting Judge Fuentes's view that Hobbs Act robbery is categorically a crime of violence under § 924(c)(3)(A)); *United States v. Howard*, 650 F. App'x 466, 467–68 (9th Cir. 2016) (mem.) (concluding that Hobbs Act robbery is a "crime of violence" under 18 U.S.C. § 924(c)(3)(A) and disagreeing with the defendant's argument that the "fear of injury" language requires an alternative conclusion); *United States v. Mendez*, 992 F.2d 1488, 1491 (9th Cir. 1993) (observing that a substantive Hobbs Act robbery offense "indisputably qualifies as a crime of violence"); *United States v. Moreno*, 665 F. App'x 678, 680–81 (10th Cir. 2016) (unpublished).

11

commit first-degree robbery in New York "satisf[ies] the plain text of . . . ACCA['s]" force requirement, *Stuckey v. United States*, 878 F.3d 62, 70 (2d Cir. 2017), and that "first-degree-robbery as defined in Connecticut General Statutes section 53a-134(a)(4) qualifies as a violent felony within the meaning of ACCA[,]" *United States v. Bordeaux*, 886 F.3d 189, 194 (2d Cir. 2018). We discern no persuasive basis to depart from these ample authorities.

As stated above, the term "robbery" in the Hobbs Act is defined, in relevant part, as "the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property." 18 U.S.C. § 1951(b)(1). Hill does not dispute that at least two of the ways in which a Hobbs Act robbery may be accomplished (by means of "actual or threatened force" or "violence") would appear, self-evidently, to satisfy § 924(c)'s force clause (defining a crime of violence as any felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another"). He focuses instead on those Hobbs Act robberies accomplished by means of putting the victim in "fear of injury" to his person or property, arguing that such robberies can be accomplished *without* the

"use, attempted use, or threatened use of physical force" so that the minimum conduct necessary to commit a Hobbs Act robbery does not include the element necessary to qualify such robberies as crimes of violence for the purpose of § 924(c)(3)(A). Hill primarily advances two arguments to support this contention. We disagree with both.

Hill first contends that a perpetrator could rob a victim by putting him in fear of injury to his property through non-forceful means. He offers hypotheticals such as threatening to throw paint on the victim's house, to spray paint his car, or, most colorfully, to "pour[ ] chocolate syrup on his passport." Hill Supp. Br. 29. Hill argues that *Johnson v. United States*, 559 U.S. 133 (*Johnson I*) (2010), made clear that the physical force that must be used, attempted, or threatened to satisfy statutory language such as that in § 924(c)(3)(A) must be "violent," "great," or "strong."[8] On that basis, Hill argues that, assuming his hypothetical acts would indeed be sufficient to put a

[8] *Johnson I* construed the meaning of physical force for purposes of 18 U.S.C. § 924(e)(2)(B)(i) which, in relevant part, defines a violent felony for purposes of ACCA as a crime that "has as an element the use, attempted use, or threatened use of physical force against the person of another." This provision thus employs language identical to that used in § 924(c)(3)(A), except for the fact that "crime of violence" is defined in the latter to include crimes having as an element the actual, attempted, or threatened use of physical force "against the person *or property* of another." § 924(c)(3)(A) (emphasis added).

victim in "fear of injury" to his property so that a Hobbs Act robbery might be accomplished (a proposition that is hardly obvious as a practical and precedential matter), the force employed in these hypothetical cases would be insufficient to satisfy the standard in *Johnson I*.[9]   We disagree.

Hill's argument rests on a flawed reading of *Johnson I*.   In that case, the Court declined to construe "physical force" for the purposes of § 924(e)(2)(B)(i) in

---

[9] Hill also suggests, along these same lines, that a perpetrator could successfully commit Hobbs Act robbery by putting a victim in fear of economic injury to an intangible asset without the use of physical force.   Hill relies almost exclusively on hypotheticals, not actual cases, to suggest that there is a realistic possibility that Hobbs Act robbery could extend to such a fact pattern.   He does cite a Fourth Circuit case, *United States v. Iozzi*, 420 F.2d 512 (4th Cir. 1970), but that case involved a charge of Hobbs Act *extortion*, not robbery, on the basis that "[the defendant] obtained or attempted to obtain money from building contractors *with their consent* by causing the contractors to fear financial and economic loss," *id.* at 513 (emphasis added).   The Government, for its part, contends that "[i]t defies logic to suggest that someone could be robbed by placing him in 'fear of injury' without using or threatening to use physical force."   Gov't Supp. Br. 12; *see also United States v. DiSomma*, 951 F.2d 494, 496 (2d Cir. 1991) ("[I]f the element of violence is not present, no conviction under section 1951 can occur.").   We conclude as to this argument that while it may indeed be the case that Hobbs Act robbery does not extend to the hypotheticals Hill posits, *see United States v. Pena*, No. 15-cr-551 (AJN), 2016 WL 690746, at *11 (S.D.N.Y. Feb. 11, 2016) (concluding that "fear of injury" in the Hobbs Act robbery statute requires "fear of injury from the use of force"), we need not explicate the statute's outer limits in this regard, as Hill has failed to show any realistic probability that a perpetrator could effect such a robbery in the manner he posits without employing or threatening physical force, *see Duenas-Alvarez*, 549 U.S. at 193 (noting that a predicate conviction fails to qualify as a crime of violence using the categorical approach only when there is "a realistic probability, not a theoretical possibility" that the statute at issue could be applied to conduct not constituting such a crime).

14

line with the common-law crime of battery, which deemed the element of "force" to be satisfied "by even the slightest offensive touching."[10] 559 U.S. at 139. But in rejecting this interpretive approach, the Court did *not* construe § 924(e)(2)(B)(i) to require that a particular quantum of force be employed or threatened to satisfy its physical force requirement. The Court concluded, instead, that "physical force" as used in § 924(e)(2)(B)(i) (which defines a violent felony in relevant part as a crime that "has as an element the use, attempted use, or threatened use of physical force against the person of another") means simply "*violent* force — that is, force capable of causing physical pain or injury to another person." 559 U.S. at 140; *see also United States v. Castleman*, 134 S. Ct. 1405, 1417 (2014) (Scalia, *J.,*

---

[10] We assume *arguendo Johnson I*'s relevance to the construction of § 924(c)(3)(A), but note that the case might not apply to the present statute for at least two reasons. First, as a matter of precedent, our Circuit has long defined the meaning of "physical force" in the context of 18 U.S.C. § 16 (which employs language similar to that used in § 924(c)(3)(A)) as "power, violence, or pressure directed against a person or thing," and we have affirmed this understanding of force in post-*Johnson I* cases. *See Morris v. Holder*, 676 F.3d 309, 314 (2d Cir. 2012) (quoting *Vargas-Sarmiento*, 448 F.3d at 169). Second, *Johnson I*'s reasoning does not necessarily extend to a statute like § 924(c)(3)(A), which includes within its definition of crime of violence those felonies that have as an element physical force threatened or employed against the person *or property* of another, as opposed to only the former. *Johnson I*'s holding rejected the possibility that mere "offensive touching," sufficient for common-law battery, could constitute a use of physical force in the context of § 924(e)(2)(B)(i). *Johnson I*, 559 U.S. at 139. Yet it is not obvious what "offensive touching" could possibly mean for *property* — a point that may suggest *Johnson I* is inapplicable to the force clause herein, or may simply reinforce our conclusion that nothing in *Johnson I* suggests that force sufficient to injure property would, under that decision, be insufficient to count as a use of physical force.

15

concurring in part and concurring in judgment) (rejecting the argument that *Johnson I* "requires force capable of inflicting 'serious' bodily injury," as opposed to "force capable of causing physical pain or injury, serious or otherwise"). Assuming *arguendo Johnson I*'s relevance to the construction of § 924(c)(3)(A), "physical force" as used in the provision at issue here means no more nor less than force capable of causing physical pain or injury to a person *or* injury to property. *See* § 924(c)(3) (defining "crime of violence" in relevant part as a felony with an element requiring "use, attempted use, or threatened use of physical force against the person *or property* of another" (emphasis added)). Hill's hypotheticals then — to the degree that they would indeed satisfy the Hobbs Act's "fear of injury" standard — do not fail to involve the use or threatened use of physical force.

Hill's second claim is no more successful. Hill next contends that an individual can commit a Hobbs Act robbery without using or threatening the use of physical force by putting the victim in fear of injury through such means, *inter alia*, as threatening to withhold vital medicine from the victim or to poison him. Lacking any case in which a defendant was in fact convicted for committing Hobbs Act robbery through such means, Hill relies principally on these

16

hypotheticals to argue that such conduct entails an insufficient direct application of physical force to satisfy the force clause — even if it indisputably involves the threatened *indirect* application of force. These hypotheticals are insufficient because a defendant is required to "point to his own case or other cases in which the . . . courts in fact did apply the statute" in such a manner to show that there is a "realistic probability" that the Hobbs Act would reach the conduct Hill describes. *Duenas-Alvarez*, 549 U.S. at 193.[11] Even assuming, *arguendo*, that there is indeed a "realistic probability" that the Hobbs Act would reach the conduct Hill describes (or analogous conduct), we again disagree that these hypotheticals demonstrate that a Hobbs Act robbery is not categorically a crime of violence for the purpose of § 924(c)(3)(A).

Hill argues, in effect, that placing a victim in fear of injury by threatening the indirect application of physical force is not sufficient to constitute the threatened use of physical force. Yet the Supreme Court has suggested

_____

[11] This requirement also undermines Hill's suggestion that a perpetrator could successfully commit Hobbs Act robbery by unintentionally placing a victim in fear of injury. In support of this argument, he cites a line of out-of-circuit cases interpreting the "intimidation" element of the federal bank robbery statute, 18 U.S.C. § 2113(a), as including unintentional intimidation. *See, e.g.*, *United States v. Kelley*, 412 F.3d 1240, 1244 (11th Cir. 2005). However, these decisions are insufficient because, as is the case with his contention that Hobbs Act robbery includes threats involving the indirect application of force, Hill cannot point to cases in which "courts in fact did apply the statute in the . . . manner for which he argues." *Duenas-Alvarez*, 549 U.S. at 193.

otherwise. In *Castleman*, the Supreme Court, construing "physical force" as it is employed in connection with § 922(g)(9), made clear that physical force "encompasses even its indirect application," as when a battery is committed by administering a poison: "That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter" lest we conclude that pulling the trigger on a gun involves no use of force "because it is the bullet, not the trigger, that actually strikes the victim."[12] 134 S. Ct. at 1414–15. Hill offers no persuasive reason why the same principle should not apply to the construction of § 924(c)(3), so that, as regarding the Hobbs Act, a robbery still has as an element "the use, attempted use, or threatened use of physical force against the person or property of another," notwithstanding that it is accomplished by threatening to poison a victim, rather than to shoot him. Some threats do not

---

[12] Section 922(g)(9) restricts persons who have been convicted of certain misdemeanor crimes of domestic violence from possessing firearms or ammunition. In relevant part, the statute defines crimes of domestic violence as misdemeanors that

> ha[ve], as an element, the use or attempted use of physical force . . . committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.

18 U.S.C. § 921(a)(33)(A).

require specification of any particular means in order to be effective; yet they still threaten *some* type of violence and the application of *some* force. Consider: "That's a nice car — would you like to be able to continue driving it?"

Hill relies on *Chrzanoski v. Ashcroft*, 327 F.3d 188, 194 (2d Cir. 2003), to argue that "the act of placing another in fear of injury" constitutes, "at best," a "threat of *injury*," which is not the same as a threat of physical force. Hill Supp. Br. 24–25. In *Chrzanoski*, we addressed a Connecticut misdemeanor that criminalized causing injury to another person, concluding that the misdemeanor at issue there was not a crime of violence for the purpose of deportation proceedings and as defined in 28 U.S.C. § 16(a) because it did not require that injury be caused through the use of physical force. 327 F.3d at 195–96; *see also Vargas-Sarmiento*, 448 F.3d at 175 n.10 (noting that, in *Chrzanoski*, "[b]ecause the plain language of the Connecticut statute did not make use of force an explicit or implicit element, we ruled that misdemeanor third degree assault was not a crime of violence under § 16(a)"). But as we have said, the taking of personal property "'by force,' . . . *is* required in Hobbs Act robbery." *United States v. Santos*, 449 F.3d 93, 99 (2d Cir. 2006) (emphasis added); *see also DiSomma*, 951 F.2d at 496 ("[I]f the element of violence is not present, no conviction under section 1951 can

occur."). And such robberies may be accomplished, *inter alia*, by placing the victim in fear of injury at the point of a gun (as in the present case) or by other menacing conduct, as when a perpetrator "wrongfully and intentionally use[s] an individual's reputation 'as a prominent figure in the Russian criminal underworld alone' to instill fear." *Santos*, 449 F.3d at 100–01. To the degree that any aspect of *Chrzanoski*'s reasoning suggests that the conduct Hill describes does not involve the threatened use of physical force, moreover, the *Chrzanoski* panel did not have the benefit of the Supreme Court's reasoning in *Castleman* to the effect that a use of physical force can encompass acts undertaken to cause physical harm, even when the harm occurs indirectly (as with poisoning) "rather than directly (as with a kick or punch)." *Castleman*, 134 S. Ct. at 1415; *see also Vargas-Sarmiento*, 448 F.3d at 175 (observing, in the context of § 16(b), that "we are not persuaded by [the] argument that first-degree manslaughter is not a crime of violence when it is committed by a person who intentionally poisons the food of an unwitting victim rather than by a person who directly injects the poison into his victim's arm[, as i]n either situation, the killer has intentionally availed himself of the forceful physical properties of poison to cause death"). Accordingly, we are unpersuaded by Hill's reliance on *Chrzanoski.*

In sum, we agree with all of the circuits to have addressed the issue, *see supra* note 7, and hold that Hobbs Act robbery "has as an element the use, attempted use, or threatened use of physical force against the person or property of another."   18 U.S.C. § 924(c)(3)(A).   We have considered each of Hill's arguments to the contrary and conclude that they are all without merit.

## CONCLUSION

For the foregoing reasons, and for those stated in the summary order issued on August 3, 2016, we **AFFIRM** the judgment of conviction.