[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-16825
Non-Argument Calendar

_____

D.C. Docket No. 6:16-cr-00081-RBD-KRS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CECIL DANTE BUCKNER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 31, 2020)

Before ROSENBAUM, BRANCH, and MARCUS, Circuit Judges.

PER CURIAM:

In 2016, Cecil Buckner pleaded guilty to conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (Count 1), two counts of Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951(a) and 2 (Counts 2 and 4), and two counts of using, carrying, and brandishing a firearm during and in relation to a crime of violence—the Hobbs Act robbery offenses alleged in Counts 2 and 4—in violation of 18 U.S.C. § 924(c)(1)(A) (Counts 3 and 5).  Buckner now appeals his convictions and his 414-month, below-guidelines total sentence of imprisonment. On appeal, Buckner argues that: (1) his § 924(c) convictions are unconstitutional because Hobbs Act robbery is not categorically a crime of violence under § 924(c)(3)(A)'s elements clause; (2) the government breached his plea agreement in various ways; (3) the district court erred in classifying him as a career offender; (4) his sentence is the product of cumulative error; and (5) his total sentence violates the Eighth Amendment.[1]  For the reasons that follow, we affirm.

---

[1]  Buckner also asserts that his counsel was constitutionally ineffective at sentencing for failing to raise certain objections.  Nevertheless, Buckner indicates that he intends to raise other ineffective-assistance-of-counsel claims in a subsequent 28 U.S.C. § 2255 motion to vacate sentence.  In the interest of avoiding piecemeal litigation and because ineffective-assistance claims are better suited for a timely § 2255 motion upon which a record can be established specifically on the issue of ineffective assistance, we decline to address Buckner's ineffective-assistance claim at this time.  *See Massaro v. United States*, 538 U.S. 500, 504 (2003) (explaining that "in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance"); *United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002) ("We will not generally consider claims of ineffective assistance of counsel raised on direct appeal where the district court did not entertain the claim nor develop a factual record.").  Buckner is free to assert this claim in a § 2255 motion.

## I.    Background

In 2016, Buckner was charged with the above-referenced counts.  He subsequently pleaded guilty, pursuant to a written plea agreement.[2]  In relevant part, the plea agreement provided that at sentencing, the government would recommend that Buckner receive a two-level adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a).  Additionally, if Buckner's offense level under the guidelines was 16 or greater and if Buckner complied with U.S.S.G. § 3E1.1(b) and all terms of the plea agreement, the government agreed to file a § 3E1.1(b) motion for an additional one-level adjustment.  The plea agreement further provided that the government would make certain information known at sentencing and that it would not use certain information in determining the applicable guideline range, subject to certain restrictions and limitations set forth in the Guidelines.

Finally, the agreement contained a sentence-appeal waiver, which provided that, by entering the agreement, Buckner

> expressly waives the right to appeal [his] sentence on any ground, including the ground that the Court erred in determining the applicable guideline range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court

---

[2]  The factual basis for the plea agreement provided that Buckner and two other individuals agreed and conspired to rob, and did in fact rob, several different Publix supermarkets in Florida.  During the robberies, Buckner held Publix employees and customers at gunpoint.

pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the [total] sentence imposed, as authorized by 18 U.S.C. § 3742 (b), then the defendant is released from his waiver and may appeal the [total] sentence as authorized by 18 U.S.C. § 3742(a).

Buckner signed the plea agreement and initialed each individual page. At the change-of-plea hearing, the district court conducted a plea colloquy, advising and questioning Buckner to determine whether his plea was knowingly, intelligently, and voluntarily made and whether he understood the consequences of his plea consistent with the requirements of Federal Rule of Criminal Procedure 11. In relevant part, the district court reviewed the charges with Buckner, explained the applicable penalties, and noted that the district court had the authority to depart from the advisory guidelines calculation. Buckner confirmed that he understood all of this information. Buckner also confirmed that he understood that he was waiving his right to appeal his sentence, except for the narrow grounds outlined in the plea agreement. The district court concluded Buckner's decision to plead guilty was knowingly, intelligently, and voluntarily made and accepted his plea.

In preparing the presentence investigation report ("PSI") using the 2016 United States Sentencing Guidelines Manual, the probation officer included certain uncharged conduct as a "pseudo-count" in the guideline range calculation. Additionally, Buckner was classified as a career offender, pursuant to U.S.S.G.

4

§ 4B1.1(a) because one of the instant offenses was a "controlled substance offense" and Buckner was previously convicted of at least two crimes of violence or controlled-substance offenses. Although the PSI did not separately enumerate a reduction for acceptance of responsibility, the probation officer noted that she included a three-level reduction for acceptance of responsibility when determining Buckner's guideline range. Buckner's advisory guideline range was 535 to 572 months' imprisonment, pursuant to U.S.S.G. § 4B1.1(c)(2).[3] The statutory maximum was life imprisonment. Buckner did not object to the PSI prior to sentencing.

---

[3] U.S.S.G. § 4B1.1(c)(2) provides that where, as here, there are multiple counts of conviction, one of which is under § 924(c), and the defendant is determined to be a career offender, the applicable guideline range is the "greater of":

    (a) the guideline range that results by adding the mandatory minimum consecutive penalty required by the 18 U.S.C. § 924(c) . . . count(s) to the minimum and the maximum of the otherwise applicable guideline range determined for the count(s) of conviction other than the 18 U.S.C. § 924(c) . . . count(s); and

    (b) the guideline range determined using the table in [§ 4B1.l(c)(3)].

Here, the guideline range prescribed by the table in § 4B1.1(c)(3) was 262 to 327 months. *See* U.S.S.G. § 4B1.1(c)(3) (2016). However, Buckner's total adjusted offense level was 29 (after a three-level reduction for acceptance of responsibility), which when combined with his criminal history category of VI, resulted in a guideline range of 151 to 188 months. Pursuant to § 4B1.1(c)(2)(a), when the statutory minimum penalty of 384 months (the § 924(c) count carried a statutory minimum penalty of 7 years and Count 5 carried a statutory minimum consecutive penalty of 25 years) was added to the minimum and maximum of the guideline range, it resulted in an applicable range of 535 to 572 months' imprisonment. Thus, Buckner's applicable guideline range was the greater range as calculated under § 4B1.1(c)(2)(a).

5

At the sentencing hearing on October 17, 2016, Buckner confirmed that he had no objections to the facts contained in the PSI or the calculation of the guidelines. The district court then adopted the PSI's factual findings and guideline range calculation and reviewed the applicable range with Buckner. The government explained that it was seeking "a guideline sentence" based on the seriousness of the offenses, Buckner's criminal history, and the need to protect the public, promote respect for the law, and provide adequate deterrence. Buckner then presented testimony from his mother, father, and girlfriend, all of whom requested leniency and contended that Buckner was a beloved family member, friend, and a non-violent person. Buckner's counsel argued for a below-guidelines sentence, noting that even a sentence at the bottom of the guideline range would amount to an actuarial life sentence for Buckner who was at the time 37 years old, and that Buckner had taken full responsibility and deserved a chance to be with his family again. Following Buckner's statement to the court, the district court sentenced him to a below-guidelines total sentence of 414 months' imprisonment.[4] The district court explained that it had imposed a below-guidelines sentence because "in the judgment of the Court the aggregate sentence including the 384

---

[4] The sentence was composed of concurrent terms of 30 months' imprisonment on Counts 1, 2, and 4, followed by the statutory mandatory-minimum consecutive term of 84 months' imprisonment on Count 3 and the statutory mandatory-minimum consecutive term of 300 months' imprisonment on Count 5. The district court also imposed a 5-year term of supervised release.

6

months which was statutorily obligated to be imposed resulted in essentially a life sentence which was greater than necessary to accomplish the statutory purposes of sentencing." Buckner did not object to the sentence.[5] This appeal followed.

## II.    Standards of Review

Where, as here, a defendant fails to object to an alleged error in the district court, we review only for plain error. *United States v. Beckles*, 565 F.3d 832, 842 (11th Cir. 2009). To establish plain error, a defendant must show: (1) an error; (2) that was clear or obvious; (3) that affected the defendant's substantial rights; and if the first three prongs are met, we then have discretion to correct the error if it (4) seriously affected the fairness, integrity, or public reputation of judicial proceedings. *United States v. Olano*, 507 U.S. 725, 732-35 (1993). A defendant's substantial rights are affected if the error "affected the outcome of the district court proceedings." *Puckett v. United States*, 556 U.S. 129, 135 (2009) (quoting *Olano*, 507 U.S. at 734). When the alleged error related to sentencing, "the 'outcome' [the defendant] must show to have been affected is his sentence." *Id.* at 142 n.4. To be clear, "[a] defendant whose plea agreement has been broken by the Government will not always be able to show prejudice, either because he obtained the benefits contemplated by the deal anyway . . . or because he likely would not have obtained those benefits in any event. . . . *Id.* at 141-42.

---

[5] The government objected to the downward variance as substantively unreasonable.

7

Further, we review the validity of a sentence-appeal waiver *de novo*. *United States v. Johnson*, 541 F.3d 1064, 1066 (11th Cir. 2008). Finally, under the prior-panel-precedent rule, "a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this Court sitting *en banc*." *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008).

## III.    Discussion

### A. Buckner's challenge to his § 924(c) convictions

Buckner argues that his § 924(c) convictions are unconstitutional and must be vacated because the predicate offense on which they are based, Hobbs Act robbery, is not categorically a crime of violence under § 924(c)'s elements clause.[6] He acknowledges that we have held that Hobbs Act robbery is a crime of violence under § 924(c)'s elements clause, but he maintains that our precedent has been effectively abrogated by the Supreme Court's decisions in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), and *United States v. Davis*, 139 S. Ct. 2319 (2019), as well as

---

[6] Although Buckner entered a plea of guilty, we have held that a guilty plea does not waive constitutional challenges to the statute of conviction. *United States v. St. Hubert*, 909 F.3d 335, 341-44 (11th Cir. 2018) (holding that the defendant's constitutional challenge to § 924(c)'s residual clause and claim that the predicate offense did not otherwise qualify as a crime of violence under § 924(c)'s elements clause was not waived by guilty plea), *abrogated on other grounds by United States v. Davis*, 139 S. Ct. 2319 (2019).

our decision in *United States v. Harris*, 916 F.3d 948 (11th Cir. 2019).[7]  We

disagree.

Section 924(c) of Title 18 of the United States Code provides for a

mandatory-minimum consecutive sentence for any defendant who uses or carries a

firearm during and in relation to, or who possesses a firearm in furtherance of, a

federal crime of violence or drug-trafficking crime.  18 U.S.C. § 924(c)(1)(A).  For

purposes of § 924(c), a "crime of violence" is defined as a felony offense that:

> (A) has as an element the use, attempted use, or threatened use of
> physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force
> against the person or property of another may be used in the course of
> committing the offense.

*Id.* § 924(c)(3)(A)-(B).  The first clause is commonly referred to as the elements

clause and the second clause is commonly referred to as the residual clause.  *Davis*,

139 S. Ct. at 2324.

Briefly, in *Johnson v. United States*, the Supreme Court held that the

residual clause of the Armed Career Criminal Act, which contained similar

language to § 924(c)(3)(B), was unconstitutionally void for vagueness.  135 S. Ct.

2551, 2563 (2015).  Thereafter, in *Dimaya*, the Supreme Court held as

---

[7]  Buckner also raises a related challenge to the constitutionality of § 924(c)'s residual clause, which he contends is void-for-vagueness.  Because the Supreme Court recently held in *Davis*, 139 S. Ct. at 2336, that § 924(c)'s residual clause was unconstitutionally vague, it is unnecessary for us to address the merits of this claim.

unconstitutionally vague 18 U.S.C. § 16(b)'s residual clause which contained virtually identical language as § 924(c)'s residual clause.  138 S. Ct. at 1210, 1223. Subsequently, in *Davis*, the Supreme Court similarly held that § 924(c)'s residual clause was unconstitutionally vague.  139 S. Ct. at 2336.

Prior to *Dimaya* and *Davis*, we held that a conviction for substantive Hobbs Act robbery categorically qualifies as a crime of violence under § 924(c)'s elements clause because it requires the use, attempted use, or threatened use of force against the person or property of another.  *In re Fleur*, 824 F.3d 1337, 1340-41 (11th Cir. 2016). Although Buckner contends that this precedent was abrogated by *Dimaya* and *Davis*, neither the *Davis* Court nor the *Dimaya* Court disturbed the elements clause in § 924(c)(3)(A).[8]  *See generally Davis*, 139 S. Ct. at 2323-36; *Dimaya*, 138 S. Ct. at 1215-23.  Indeed, we have, post-*Dimaya*, reaffirmed our holding that a conviction for substantive Hobbs Act robbery categorically qualifies as a crime of violence under § 924(c)'s elements clause.

---

[8]  Buckner also argues that the Supreme Court's decision in *Herrera v. Wyoming*, 139 S. Ct. 1686 (2019), establishes that "where the Supreme Court alters the reasoning underlying a question of law, lower courts' decisions relying upon the repudiated reasoning are no longer binding, even if they were not explicitly overruled or abrogated."  Thus, he argues that *Fleur* is not binding because the reasoning this Court relied upon was repudiated in *Mathis v. United States*, 136 S. Ct. 2243 (2016).  However, we rejected a virtually identical argument in *St. Hubert*, noting that *Mathis* addressed the enumerated crimes clause of the ACCA's violent felony definition, not the crime of violence definition contained in § 924(c)'s elements clause and therefore was not directly on point.  *St. Hubert*, 909 F.3d at 347 n.9.  Thus, we disagree with Buckner's suggestion that we may disregard *Fleur* in light of *Mathis*.

*See United States v. St. Hubert*, 909 F.3d 335, 345 (11th Cir. 2018), *abrogated on other grounds by Davis*, 139 S. Ct. 2319.  *St. Hubert* and *Fleur* remain valid binding precedent in this Circuit.[9]

Buckner also argues that our decision in *Harris*, 916 F.3d at 954-59, which analyzed whether there was sufficient evidence to sustain a conviction for Hobbs Act extortion, demonstrates that Hobbs Act robbery can be committed without the use of force and undermines our precedent to the contrary.  Buckner's reliance on *Harris* is misplaced.  As we explained in *St. Hubert*, the Hobbs Act, which prohibits interference with interstate commerce by robbery or extortion, "is a divisible statute that sets out multiple crimes."  909 F.3d at 348.  In other words, the offenses of Hobbs Act robbery and Hobbs Act extortion, while codified in the same statutory provision, are separate and distinct crimes.  *See id.*  Thus, our analysis of Hobbs Act extortion in *Harris* has no bearing on how the offense of Hobbs Act robbery may be committed.  Accordingly, Buckner's challenge to his § 924(c) convictions is foreclosed by our decisions in *St. Hubert* and *Fleur*, and we

---

[9] Notably, many of our sister Circuits have similarly held that Hobbs Act robbery categorically qualifies as a crime of violence under § 924(c)'s elements clause. *See, e.g.*, *United States v. Garcia-Ortiz*, 904 F.3d 102, 106-09 (1st Cir. 2018), *cert. denied*, 139 S. Ct. 1208 (2019); *United States v. Melgar-Cabrera*, 892 F.3d 1053, 1064-66 (10th Cir.), *cert. denied*, 139 S. Ct. 494 (2018); *United States v. Hill*, 890 F.3d 51, 55-60 (2d Cir. 2018), *cert. denied*, 139 S. Ct. 844 (2019); *United States v. Gooch*, 850 F.3d 285, 291-92 (6th Cir. 2017); *United States v. Rivera*, 847 F.3d 847, 848-49 (7th Cir. 2017); *United States v. Buck*, 847 F.3d 267, 274-75 (5th Cir. 2017); *United States v. House*, 825 F.3d 381, 386-87 (8th Cir. 2016).

11

are bound by those decisions under the prior-panel-precedent rule. *Archer*, 531 F.3d at 1352.

## B. Whether the government breached the plea agreement[10]

Buckner argues that the government breached his plea agreement by: (1) failing to recommend that he receive reductions for acceptance of responsibility; (2) failing to make certain information known at sentencing; and (3) including certain uncharged conduct in the guideline range calculation. Because Buckner did not raise any of these claims before the district court, we review for plain error. *Olano*, 507 U.S. at 734-35; *see also Puckett*, 556 U.S. at 143 (holding that plain-error review applies to unpreserved breach-of-plea-agreement claims).

### 1. Failure to recommend a reduction for acceptance of responsibility at sentencing

Buckner argues that the government breached the plea agreement by failing to recommend at sentencing that he receive reductions for accepting responsibility. He contends that this amounted to plain error because nothing in the record suggests that he was not entitled to those reductions and, "had the Government spoken up at sentencing, its recommendation would have [had] a marked effect on

---

[10] Although Buckner's plea agreement contained a sentence-appeal waiver, "an appeal waiver does not bar a defendant's claim that the government breached the plea agreement." *United States v. Hunter*, 835 F.3d 1320, 1324 (11th Cir. 2016).

various Guidelines-mandated factors from 18 U.S.C. § 3553." He acknowledges that a three-level reduction was included in the PSI, which was adopted by the district court, but maintains that the district court lacked the authority to grant him a U.S.S.G. § 3E1.1(b) reduction without a formal motion from the government.[11]

Here, it is undisputed that the government did not request a three-level reduction for acceptance of responsibility at Buckner's sentencing and did not file a formal motion, pursuant to § 3E1.1(b). Notwithstanding this omission, the record reflects that the terms of the plea agreement were included in the PSI, including that "the government will recommend a three level reduction for acceptance of responsibility." And, the probation officer included a three-level reduction for acceptance of responsibility in the PSI guideline calculation, which was adopted by the district court. Thus, Buckner cannot show that the alleged breach affected his substantial rights (*i.e.*, the outcome of his sentence) because he received the benefit for which he bargained. *See Puckett*, 556 U.S. at 141-42 & n.4.

Moreover, Buckner's argument that the government's recommendation of a three-level reduction for acceptance of responsibility would have had an effect on

---

[11] Application Note 6 to U.S.S.G. § 3E1.1 provides that "[b]ecause the Government is in the best position to determine whether the defendant has assisted authorities in a manner that avoids preparing for trial, an adjustment under subsection (b) may only be granted upon a formal motion by the Government at the time of sentencing." U.S.S.G. § 3E1.1 cmt. (n.6).

the district court's consideration of the § 3553(a) factors or resulted in a greater downward variance is based on pure speculation, which is insufficient to satisfy the third prong of plain error review. *See United States v. Rodriguez*, 398 F.3d 1291, 1301 (11th Cir. 2005) ("[W]here the effect of an error on the result in the district court is uncertain or indeterminate—where we would have to speculate—the appellant has not met his burden of showing a reasonable probability that the result would have been different but for the error; he has not met his burden of showing prejudice; he has not met his burden of showing that his substantial rights have been affected." (citing *Jones v. United States*, 527 U.S. 373, 394-95 (1999))).

2.  Failure to make certain information known at sentencing

Buckner argues that the government breached the plea agreement when it failed to make certain information known at sentencing. The government concedes that it failed to discuss the subject information at sentencing, but argues Buckner is not entitled to relief because he cannot show that this error affected his substantial rights.

Here, the record reflects that, although the information was not discussed by the government at sentencing, the district court was well aware of the information at issue, as it was discussed extensively in the plea agreement and Buckner's counsel noted this information when arguing for a below-guidelines sentence. Buckner's contention that he received a longer sentence than he otherwise would

14

have because the government failed to discuss this information is pure speculation, particularly given that the district court varied downward 120 months from the bottom of the guideline range by sentencing Buckner to a total of 414 months' imprisonment, 384 months' of which was a mandatory-minimum term over which the district court had no discretion.[12]  Accordingly, Buckner failed to establish that this alleged error affected his substantial rights.  *See Rodriguez*, 398 F.3d at 1301.

3.  Inclusion of certain uncharged conduct in the guideline range calculation

Buckner argues that the government breached the plea agreement by including certain uncharged conduct in the guideline range calculation.

The use-of-information provision of the plea agreement was subject to the restrictions and limitations set forth in the guidelines.  Having reviewed the guidelines and the record, we conclude that Buckner has failed to establish that the

---

[12]  In a notice of supplemental authority, Buckner contends that the passage of the First Step Act of 2018, which eliminated stacking of consecutive enhanced sentences for first-time offenders who are charged and convicted of multiple § 924(c) counts, demonstrates that the government's alleged breach prejudiced him and seriously affected the integrity of the judicial proceedings.  Buckner also contends that the First Step Act should apply to him on direct appeal and that his case should be remanded for resentencing in light of the changes to § 924(c).  Buckner's reliance on the First Step Act is misplaced, as it was not enacted until December 21, 2018, well after his October 17, 2016 sentencing hearing, and Congress expressly stated in the Act that the § 924(c) changes "shall apply to any offense that was committed before the date of enactment of this Act, *if a sentence for the offense has not been imposed as of such date of enactment*."  *See* First Step Act of 2018, Pub. L. No. 115-391, § 403(b), 132 Stat. 5194, 5222 (2018) (emphasis added).  Therefore, the First Step Act's changes to § 924(c) do not apply to Buckner's case, and do not establish that the government's alleged breaches prejudiced him or seriously impacted the integrity of the judicial proceedings.  *Id.*

government plainly erred in including the uncharged conduct in the guideline calculation.

Nevertheless, assuming *arguendo* that inclusion of this information was error, Buckner cannot show that it had an effect on his substantial rights for purposes of plain error review. *See Puckett*, 556 U.S. at 141-42 & n.4. Specifically, although Buckner is correct that the inclusion of this conduct increased the initial adjusted base offense level calculation, that offense level calculation was superseded by the higher offense level that applied based on Buckner's classification as a career offender. *See* U.S.S.G. § 4B1.1(b) (explaining that where the offense level from the career offender table is higher than the otherwise applicable offense level the offense level from the table applies) And the district court adopted the PSI's factual findings and guideline calculation.[13] Therefore, the inclusion of this information did not affect his sentence or the outcome in the district court. *Puckett*, 556 U.S. at 141-42 & n.4.

## C. Whether Buckner was improperly classified as a career offender

Buckner argues that he was improperly classified as a career offender, pursuant to U.S.S.G. § 4B1.1, because Hobbs Act robbery is not a "controlled

---

[13] Although Buckner contends throughout his brief that there were two ways in which the district court could have arrived at the determination that his guideline range was 535 to 572 months' imprisonment and that it is unclear which method the district court employed, this contention is belied by the record. The PSI expressly indicated that Buckner's guideline range was determined based on his career-offender designation and the provisions of U.S.S.G. § 4B1.1(c)(2)(A), and the district court adopted the PSI in full.

16

substance offense" as alleged in the PSI.  Alternatively, he argues that had the PSI

characterized Hobbs Act robbery as a crime of violence, this categorization too

would have been error because it is not categorically a crime of violence for

purposes of the career-offender enhancement, but regardless the government

"cannot rewrite the PSI."  The government contends that Buckner's sentence-

appeal waiver bars this claim,[14] and, in the alternative that this argument fails on

the merits because Hobbs Act robbery is a qualifying crime of violence for

purposes of the enhancement.

A sentence-appeal waiver will be enforced if it was made knowingly and

voluntarily.  *United States v. Bushert*, 997 F.2d 1343, 1351 (11th Cir. 1993).  For a

sentence-appeal waiver to be valid, (1) the district court must have specifically

questioned the defendant about the waiver; or (2) it must be "manifestly clear from

the record that the defendant otherwise understood the full significance of the

waiver."  *Id.*

In this case, it is manifestly clear from the record that Buckner understood

the significance of the sentence-appeal waiver.  He initialed each page of the plea

agreement, including the page stating that he was giving up any right to appeal the

---

[14] Unlike Buckner's constitutional challenge to his § 924(c) convictions, Buckner's challenge to his career-offender classification does not present a constitutional issue concerning the underlying statute, and, therefore, it can be barred by a valid and enforceable sentence-appeal waiver.  *See United States v. Frye*, 402 F.3d 1123, 1129 (11th Cir. 2005) (holding that valid sentence-appeal waiver barred defendant's claim "that the district court erroneously enhanced his sentence using mandatory sentencing guidelines").

sentence imposed "on any ground, including the ground that the [c]ourt erred in determining the applicable guidelines range[,]" except in the event that his sentence exceeded the guideline range or the statutory maximum, or otherwise violated the Eighth Amendment.  He also signed the portion of the plea agreement stating that he had read the agreement in its entirety, had discussed it with his counsel, and that he understood the terms of the agreement.  Then, at the change-of-plea hearing, Buckner confirmed that he read and discussed the plea agreement with his counsel, that he understood the terms, and that he did not have any questions about the plea agreement.  Buckner also affirmatively stated that he understood that he could not appeal his sentence, except for the limited reasons set forth in the plea agreement.  He confirmed that this waiver was freely and voluntarily made.  Accordingly, the record establishes that the sentence-appeal waiver was knowingly and voluntarily made, and none of the enumerated exceptions to the waiver are present.   Therefore, the sentence-appeal waiver is valid and enforceable.  *Bushert*, 997 F.2d at 1351; *see also United States v. Weaver*, 275 F.3d 1320, 1333 (11th Cir. 2001) (enforcing an appeal waiver where "the waiver provision was referenced during [the defendant's] Rule 11 plea colloquy and [the defendant] agreed that she understood the provision and that she entered into it freely and voluntarily.")

18

Buckner contends that, notwithstanding the waiver, we must consider his claim to avoid a miscarriage of justice and because "errors in the PSI and the Government's breaches of the Plea Agreement cumulatively infected the integrity of the sentencing proceedings."[15]  However, "[a]n appeal waiver includes the waiver of the right to appeal difficult or debatable legal issues or even blatant error."  *United States v. Grinard-Henry*, 399 F.3d 1294, 1296 (11th Cir. 2005).  Indeed, we have enforced sentence-appeal waivers under similar circumstances to those here.  *See e.g.*, *United States v. Rubbo*, 396 F.3d 1330, 1335 (11th Cir. 2005) (holding that the right to appeal a sentence based on *Apprendi/Booker* grounds can be waived in a plea agreement and dismissing the appeal); *United States v. Howle*, 166 F.3d 1166, 1167-69 (11th Cir. 1999) (enforcing a sentence-appeal waiver and dismissing appeal involving a claim that the district court erred in denying a downward departure under U.S.S.G. § 5K2.0).  While we agree that "[i]n extreme circumstances—for instance, if the district court had sentenced [the defendant] to a public flogging—due process may require that an appeal be heard despite a previous waiver," *Howle*, 166 F.3d at 1169 n.5, such circumstances are not present here, particularly where Buckner failed to raise an objection to the career-offender classification below, despite having ample opportunity to do so.  *See also Spencer*

---

[15] As explained *supra*, Buckner is not entitled to relief under plain error review on his claims that the government breached the plea agreement.  To the extent he is reiterating his claim of cumulative error, that claim is separately discussed in section D.

19

*v. United States*, 773 F.3d 1132, 1138 (11th Cir. 2014) (concluding, in the context of a motion to vacate sentence pursuant to 28 U.S.C. § 2255, that "the alleged error in this appeal—erroneously designating a defendant as a career offender—is not a fundamental defect that inherently results in a complete miscarriage of justice"). Accordingly, we conclude the sentence-appeal waiver is valid and enforceable and bars this claim.

## D. Whether Buckner's sentence was the product of cumulative error

Buckner argues that his sentence was the product of cumulative error, namely all of the errors complained of in his appeal when considered in the aggregate. Here, as discussed above, none of the alleged errors impacted Buckner's sentence. Accordingly, his claim for cumulative error fails. *See United States v. Gamory*, 635 F.3d 480, 497 (11th Cir. 2011) ("Where there is no error or only a single error, there can be no cumulative error."); *United States v. Barshov*, 733 F.2d 842, 852 (11th Cir. 1984) (explaining that, "[w]ithout harmful errors, there can be no cumulative effect compelling reversal.").

## E. Whether Buckner's total sentence violates the Eighth Amendment

Buckner argues that his 414-month sentence (34.5 years) violates the Eighth Amendment because it is grossly disproportionate to the offense committed as he received effectively an actuarial life sentence for a non-capital crime. He also argues that his sentence is grossly disproportionate because one of his

co-conspirators received a sentence of only 156 months' imprisonment. Because Buckner failed to raise an Eighth Amendment challenge to his sentence before the district court, "we review that challenge on appeal for plain error." *See United States v. Flanders*, 752 F.3d 1317, 1342 (11th Cir. 2014).

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. Amend. VIII. "In non-capital cases, the Eighth Amendment encompasses, at most, only a narrow proportionality principle." *Flanders*, 752 F.3d at 1342 (quoting *United States v. Reynolds*, 215 F.3d 1210, 1214 (11th Cir. 2000)). "Outside the context of capital punishment, there are few successful challenges to the proportionality of sentences. 'This is so because we accord substantial deference to Congress, as it possesses broad authority to determine the types and limits of punishments for crimes.'" *United States v. Johnson*, 451 F.3d 1239, 1242-43 (11th Cir. 2006) (quoting *United States v. Raad*, 406 F.3d 1322, 1323 (11th Cir. 2005)).

In evaluating such challenges, we must first "make a threshold determination that the sentence imposed is grossly disproportionate to the offense committed." *Id.* (quoting *Raad*, 406 F.3d at 1324). And, "[t]he defendant bears the burden of making that showing." *Id.* If we find that the sentence imposed is grossly disproportionate, "we then consider sentences imposed on others convicted of the

same crime." *Flanders*, 752 F.3d at 1342.  Notably, "[i]n general a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment." *Johnson*, 451 F.3d at 1243 (quoting *United States v. Moriarty*, 429 F.3d 1012, 1024 (11th Cir. 2005)).  Indeed, "we have never held that a non-capital sentence for an adult has violated the Eighth Amendment." *United States v. Suarez*, 893 F.3d 1330, 1336 (11th Cir. 2018).

Buckner argues that the usual deference afforded to Congress in determining the types and limits of punishments should not be afforded to § 924(c) because it "does not reflect careful Congressional consideration" and "mandates severe sentences" for varying offense combinations whether or not paired with crimes of violence.  We disagree.  First, "the mandatory nature of a sentence is irrelevant for Eighth Amendment purposes." *United States v. Bowers*, 811 F.3d 412, 432 (11th Cir. 2016).  Second, the Supreme Court has emphasized that substantial deference is owed to the legislative branch in reviewing criminal penalties and has emphasized that the utmost judicial restraint should be exercised in this area.  *See, e.g.*, *Harmelin v. Michigan*, 501 U.S. 957, 998-99 (1991) (Kennedy, J., concurring in part and concurring in the judgment)[16] (explaining that the first principle informing proportionality review "is that the fixing of prison terms for specific

---

[16] As we explained in *United States v. Farley*, 607 F.3d 1294, 1339 (11th Cir. 2010), the Supreme Court has repeatedly recognized that Justice Kennedy's concurring opinion in *Harmelin* was the controlling opinion with regard to proportionality.

22

crimes involves a substantive penological judgment that, as a general matter, is 'properly within the province of legislatures, not courts'" (quoting *Rummel v. Estelle*, 445 U.S. 263, 275-76 (1980)); *Hutto v. Davis*, 454 U.S. 370, 374 (1982) (emphasizing that "federal courts should be 'reluctan[t] to review legislatively mandated terms of imprisonment' and that 'successful challenges to the proportionality of particular sentences' should be 'exceedingly rare'" (quoting *Rummel*, 445 U.S. at 272, 274)); *Gore v. United States*, 357 U.S. 386, 393 (1958) (noting that "[w]hatever views may be entertained regarding severity of punishment, whether one believes in its efficacy or its futility, these are peculiarly questions of legislative policy" (internal citation omitted)).

Buckner has not met his burden of establishing that his below-guidelines sentence of 414 months is grossly disproportionate to the offenses committed. He was sentenced within the applicable statutory limits for each offense.[17]  *See Johnson*, 451 F.3d at 1243.  Furthermore, both the Supreme Court and our Circuit have upheld greater sentences for defendants convicted of less serious or similar

---

[17] Counts 1, 2, and 4 each carried a statutory maximum of 240 months' imprisonment, and Buckner received concurrent terms of 30 months' imprisonment on each count, well below the statutory maximum.  *See* 18 U.S.C. § 1951(a).  Counts 3 and 5 each carried statutory maximum terms of life imprisonment, and Buckner received the applicable mandatory-minimum terms of 84 and 300 months, respectively.  *See* 18 U.S.C. § 924(c)(1); *United States v. Pounds*, 230 F.3d 1317, 1319 (11th Cir. 2000) (noting that "every conviction under § 924(c)(1)(A) carries with it a statutory maximum sentence of life imprisonment, regardless of what subsection the defendant is sentenced under").

conduct against Eighth Amendment challenges.  *See Harmelin*, 501 U.S. at 961, 996 (rejecting Eighth Amendment challenge and affirming sentence of life without parole for possession of 672 grams of cocaine); *Hutto*, 62 F.3d at 371-75 (rejecting Eighth Amendment challenge to a 40-year sentence under Virginia law for possession of nine ounces of marijuana); *United States v. Bowers*, 811 F.3d 412, 433 (11th Cir. 2016) (rejecting Eighth Amendment challenge to mandatory 182-year sentence for brandishing a firearm during eight separate robberies); *United States v. Brant*, 62 F.3d 367, 368 (11th Cir. 1995) (rejecting Eighth Amendment challenge to 188-month sentence imposed for manufacturing marijuana).[18]

Finally, the sentence of his co-conspirator is irrelevant to our inquiry because, unlike Buckner, the co-conspirator at issue was not charged or convicted of violating § 924(c).  *Flanders*, 752 F.3d at 1342.  Accordingly, Buckner's sentence does not violate the Eighth Amendment.

---

[18] In light of these decisions, we are not persuaded by Buckner's argument that the enactment of the First Step Act of 2018 demonstrates that his 34.5 year sentence is grossly disproportionate to the offenses committed, namely conspiracy to commit Hobbs Act robbery, two counts of Hobbs Act robbery, and two counts of using, carrying or brandishing a firearm during and in relation to a crime of violence.  *See Ewing v. California*, 538 U.S. 11, 23 (2003) ("The Eighth Amendment does not require strict proportionality between crime and sentence. Rather it forbids only extreme sentences that are 'grossly disproportionate' to the crime." (quoting *Harmelin*, 501 U.S. at 1001 (Kennedy, J., concurring))); *Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) ("The gross disproportionality principle reserves a constitutional violation for only the extraordinary case.").

IV.    Conclusion

For the foregoing reasons, we affirm Buckner's convictions and sentences.

**AFFIRMED.**