18-1933 (L)
*United States v. Walker*

# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2019

(Argued: December 6, 2019    Decided: September 11, 2020)

Nos. 18-1933, 18-2085

UNITED STATES OF AMERICA,

*Appellee–Cross-Appellant*,

–v.–

SHAMEKE WALKER,

*Defendant-Appellant–Cross-Appellee.*

B e f o r e :

JACOBS, CARNEY, and PARK, *Circuit Judges.*

Following his arrest for a 2015 attempted robbery of a convenience store in Brooklyn, Defendant-Appellant Shameke Walker was charged with (1) one count of Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a) ("Count One" or the "Hobbs Act robbery count"); (2) one count of Committing Physical Violence in Furtherance of a Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a) ("Count Two" or the "violence-in-Hobbs Act robbery count"); (3) one count of Possessing, Brandishing, and Discharging a Firearm During a Crime of Violence, in violation of 18 U.S.C. § 924(c) ("Count Three" or the "firearm-in-violent-crime count"); and (4) one count of being a Felon in Possession of

Ammunition, in violation of 18 U.S.C. § 922(g)(1) ("Count Four" or the "felon-in-possession count"). Walker proceeded to trial by jury, which the United States District Court for the Eastern District of New York (Weinstein, *J.*) bifurcated. The first phase was limited to prosecution of Counts One, Two, and Three; the second, to Count Four. The jury convicted Walker on all counts. At sentencing, the District Court dismissed the violence-in-Hobbs Act robbery count as duplicative of the Hobbs Act robbery count and then rejected the government's argument that the Armed Career Criminal Act (the "ACCA"), 18 U.S.C. § 924(e), mandated imposition of a 15-year minimum incarceratory sentence on Walker. The court reasoned that Walker's predicate convictions did not support the proposed mandatory minimum sentence because, in its view, New York Robbery in the Second Degree was not a "violent felony" within the meaning of the ACCA. The court imposed a sentence of time served for Counts One and Four, and the ten-year mandatory minimum for Count Three that applied to a defendant with Walker's criminal history.

Walker timely appealed, challenging his convictions on Counts Three and Four, attacking several evidentiary rulings made by the District Court, and contesting the District Court's denial of his motion for a new trial. The government cross-appealed, arguing that binding Second Circuit precedent compels the conclusion that New York Robbery in the Second Degree is a "violent felony" within the meaning of the ACCA and that the District Court's sentence was therefore based on an erroneous legal conclusion. On review, we identify no basis to disturb Walker's convictions on Counts Three or Four. We similarly discern no abuse of discretion in the District Court's evidentiary rulings or in its denial of Walker's motion for a new trial. We conclude, however, that the District Court erred in determining that New York Robbery in the Second Degree is not a "violent felony" for purposes of the ACCA. Accordingly, we **AFFIRM** Walker's judgment of conviction and **REMAND** for **RESENTENCING**.

**AFFIRMED AND REMANDED FOR RESENTENCING.**

———————

> MICHAEL O. HUESTON, ESQ., Brooklyn, N.Y., *for Defendant-Appellant–Cross-Appellee.*
>
> ANDREY SPEKTOR, Assistant United States Attorney for the Eastern District of New York (Samuel P. Nitze & Lindsay K. Gerdes, Assistant United States Attorney,

2

*on the brief*), *for* Seth D. DuCharme, Acting United States Attorney for the Eastern District of New York, Brooklyn, N.Y., *for Appellee–Cross-Appellant*.

———————

CARNEY, *Circuit Judge*:

In 2016, Defendant-Appellant Shameke Walker was convicted by a jury of (1) Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a) ("Count One" or the "Hobbs Act robbery count"); (2) Committing Physical Violence in Furtherance of a Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a) ("Count Two" or the "violence-in-Hobbs Act robbery count," which is not challenged on appeal); (3) Possessing, Brandishing, and Discharging a Firearm During a Crime of Violence, in violation of 18 U.S.C. § 924(c) ("Count Three" or the "firearm-in-crime-of-violence count"); and (4) Being a Felon in Possession of Ammunition, in violation of 18 U.S.C. § 922(g)(1) ("Count Four" or the "felon-in-possession count"), all in connection with his 2015 robbery of a convenience store in Brooklyn, New York. After dismissing the violence-in-Hobbs Act robbery count as duplicative of the Hobbs Act robbery count, the United States District Court for the Eastern District of New York (Weinstein, *J.*) sentenced Walker to ten years of incarceration—the mandatory minimum sentence associated with the firearm-in-crime-of-violence count—to run consecutive to a sentence of time served on Counts One and Four. We now resolve Walker's appeal and the government's cross-appeal.

Walker attacks his three remaining convictions on several grounds. He first argues that the firearm-in-crime-of-violence count should have been dismissed because (he submits) Hobbs Act robbery is not a "violent crime" within the meaning of 18 U.S.C. § 924(c). On the same rationale, he maintains that the District Court's jury instructions regarding the firearm-in-crime-of-violence count were erroneous, warranting vacatur.

3

Walker also urges that the Supreme Court's decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), compels reversal of his conviction on the felon-in-possession count because the District Court lacked jurisdiction over his prosecution, the government adduced insufficient evidence to prove that count, and the related jury instructions were erroneous. Walker further contends that the District Court made numerous erroneous evidentiary rulings, necessitating a new trial. Finally, Walker assails the District Court's denial of his motion for a new trial under Federal Rule of Criminal Procedure 33, charging several different errors that in his view require retrial.

On its cross-appeal, the government points to several recent decisions by our Court that, in its view, establish that New York Robbery in the Second Degree is a "violent felony" under the ACCA, 18 U.S.C. § 924(e). *See, e.g., United States v. Moore*, 916 F.3d 231 (2d Cir. 2019); *United States v. Thrower*, 914 F.3d 770 (2d Cir. 2019); *United States v. Pereira-Gomez*, 903 F.3d 155 (2d Cir. 2018). These decisions necessitate a remand to the District Court for resentencing, in the government's view.

For the reasons that follow, we reject each of Walker's lines of attack. His arguments with respect to Count Three, the firearm-in-crime-of-violence count, are foreclosed by our opinion in *United States v. Hill*, 890 F.3d 51, 60 (2d Cir. 2018), in which we held that Hobbs Act robbery qualifies, categorically, as a crime of violence under the elements clause of 18 U.S.C. § 924(c). His jurisdictional challenge to his conviction on Count Four, the felon-in-possession count, is similarly foreclosed by our opinion in *United States v. Balde*, 943 F.3d 73, 92 (2d Cir. 2019), and he cannot establish that the asserted evidentiary and other failures on the part of the government and the District Court amount to plain error requiring vacatur or reversal. As discussed in detail below, the District Court acted well within the permissible bounds of its discretion in its

4

various evidentiary rulings and in denying Walker's motion for a new trial. As to the government's cross-appeal, however, we agree that our recent precedents confirm that New York Robbery in the Second Degree falls within the ACCA's definition of "violent felony" and that, accordingly, resentencing is required.

We therefore AFFIRM Walker's judgment of conviction and REMAND for RESENTENCING.

## BACKGROUND[1]

This appeal stems from Walker's conviction for the June 13, 2015 robbery of a Brooklyn convenience store. During that robbery, Walker—who was then on supervised release following his conviction for unlawfully possessing a firearm but, nevertheless, had come to the scene equipped with a firearm—attempted to shoot the store's clerk, Bazel Almontaser. Walker missed. His shot instead struck an uninvolved security guard standing across the street.

Based on the events of that day, a grand jury returned an indictment charging Walker with Hobbs Act robbery and a related offense (Counts One and Two), as well as crimes relating to his unlawful possession and use of a firearm and ammunition (Counts Three and Four).[2] Walker decided to proceed to trial on these charges.

---

[1] Because Walker appeals his conviction by a jury, "our statement of the facts views the evidence in the light most favorable to the government, crediting any inferences that the jury might have drawn in its favor." *United States v. Rosemond*, 841 F.3d 95, 99-100 (2d Cir. 2016). Unless otherwise noted, when quoting cases in this Opinion, all alterations, brackets, citations, and internal quotation marks have been omitted.

[2] With respect to Count Four, the government charged Walker with possession of ammunition as opposed to a firearm because no gun was recovered from the crime scene; only a shell casing was found.

## I.  Pretrial Proceedings

Before Walker's trial began, the District Court made several rulings that are relevant to this appeal and that we therefore discuss in some detail.

*First*, in April 2016, the court denied Walker's motion to dismiss Count Three (the firearm-in-crime-of-violence count) for failure to state a claim. It reasoned that the question whether Hobbs Act robbery, as charged in Count One, was a crime of violence with the meaning of 18 U.S.C. § 924(c)—a question that was being litigated when Walker sought Count Three's dismissal—was not dispositive of the motion because committing physical violence in furtherance of a Hobbs Act robbery, as charged in Count Two, *was* such a crime.

*Second*, the District Court denied Walker's motion to preclude admission of fingerprint evidence collected from a cigarette carton that, as captured on video by surveillance cameras, Walker had attempted to steal from the convenience store during the robbery. In the period leading up to trial, the government produced to Walker, among other discovery, a report prepared by New York City Police Department ("NYPD") Detective Patricia Lezcano discussing those fingerprints (the "Fingerprint Report"). The Fingerprint Report advised that the carton contained three latent prints, each of which was matched to Almontaser.

At the time, the parties appear to have understood the Fingerprint Report to mean that the carton contained no other usable prints. This understanding was dispelled, however, when—just days before trial was scheduled to begin—the government met with Lezcano in a witness preparation session and she clarified that the carton contained a fourth print that was in fact usable; she simply had not identified its source. The government then directed Lezcano to perform a comparative analysis

between the unidentified fourth print and Walker's prints and, after doing so, Lezcano determined that the previously unidentified print was Walker's.

When the government disclosed this new information, Walker responded that the government had violated its Rule 16 obligation to timely comply with discovery requests and asked the District Court "to preclude this fingerprint evidence." App'x 178. Finding the new evidence too "important" to exclude, the court refused to do so, but signaled that it was willing to provide Walker a lengthy continuance, including to prepare for a *Daubert* hearing as to whether the report was "unreliable as a class of evidence." App'x 178-79. Walker instead determined to challenge the fingerprint evidence through the testimony of one Dr. Itiel Dror, an expert in cognitive bias. The District Court allowed Walker to proceed as he proposed, and additionally, accommodated his request for a trial date in July, the month following all of this motions practice.

*Third*, the court permitted Officer Tanya Parris of the U.S. Probation and Pretrial Services Office ("Probation") to make an in-court identification of Walker. Parris had supervised Walker, in connection with a prior conviction, for a year before the robbery. Because of her familiarity with Walker—including with his general appearance at the time of the robbery—the government sought to adduce her testimony that Walker was the very person captured on the convenience store surveillance video in the middle of committing the robbery in question. The District Court agreed that such an identification would be probative, but it also recognized that it would be prejudicial to Walker should the jury learn that Parris knew him only in her capacity as his probation officer. It therefore precluded any testimony relating to the precise circumstances under which Walker and Parris had become acquainted, ordering Parris that she should

7

"inform the jury on direct examination" only "that she 'works for an agency to which Mr. Walker has to report.'" App'x 174.

*Fourth*, the court found unpersuasive Walker's motion to preclude Almontaser's pretrial identification of Walker from a photographic array, in which Walker argued primarily that the fillers (photographs of non-suspects) did not bear sufficient resemblance to him. After examining the array itself, the District Court concluded that the array was "good," rather than being unduly "suggestive." App'x 118.

*Fifth*, and finally, the court precluded the defense's proposed inquiry into Almontaser's two prior domestic violence convictions, reasoning that they did not have "anything to do . . . with credibility under Rule 403" of the Federal Rules of Evidence. App'x 191. The District Court did, however, allow Walker to cross-examine Almontaser about his role in selling K2, an illegal strain of synthetic marijuana, from the convenience store, consistent with the defense's theory that what occurred on July 15, 2018, was not a robbery, but rather a drug deal gone wrong.

## II.    Phase I of the Trial

Trial began on Monday, July 11, 2016. On Walker's motion, the District Court had agreed to bifurcate the trial, as described above, separating prosecution of Counts One through Three (the robbery and related firearm charges) from that of Count Four (the felon-in-possession count) so that the jury would learn about Walker's criminal history only after it had reached a verdict on the robbery-related offenses.

To prove its case with respect to the first three charges, the government relied primarily on testimony from the following witnesses: (1) NYPD Detective *Yuan Newton*, the lead investigator on the robbery case, who testified about his observations of the crime scene, his conversations with Almontaser regarding the robbery, the video

8

surveillance system used at the store and the footage it captured of many of the events leading up to the robbery and large portions of the robbery itself, the various steps he took to identify a suspect (including the process of generating a photo array), and Walker's eventual arrest; (2) store clerk *Almontaser*, who testified about his role as a clerk at the convenience store, the sale of K2 at the store, and his recollection of the events that had occurred on the day of the robbery; (3) NYPD Officer *Robert Youngs*, who testified about photographing and collecting evidence from the crime scene, including the shell casings that were the basis of the ammunition charge and the cigarette carton bearing Walker's fingerprint; (4) NYPD Detective *Gerald Rex* and NYPD Detective *Lezcano*, both of whom testified about the fingerprint evidence; and finally, (5) Probation Officer *Parris*, who identified Walker in the surveillance video as the person robbing the store.

For his part, Walker mounted his defense primarily through rigorous cross-examinations intended to demonstrate that he was not the robber (a case of mistaken identity) and that Almontaser was not credible (because, as counsel argued, he was "a lying drug dealer"). App'x 918. Indeed, Walker relied heavily on the fact that portions of the surveillance video were inexplicably missing, implying that the police had destroyed footage that lent credence to his alternative theory, including video of Almontaser dealing drugs from the store. To further bolster that theory of the case, Walker attacked the fingerprint evidence through testimony provided by his witness Dr. Dror about the manner in which cognitive and other biases can lead fingerprint examiners to reach inaccurate conclusions.

Following the first phase of the bifurcated trial, which concluded on Friday, July 15, the jury convicted Walker of Counts One, Two, and Three.

9

## III.    Phase II of the Trial

During the second phase of the trial—which took place beginning the afternoon of July 15, immediately after the verdicts were rendered on the first three counts—the government read into the record two stipulations: One established the fact of Walker's prior felony conviction and the other that a cartridge casing recovered from the robbery scene constituted "ammunition" for purposes of the firearm-in-crime-of-violence count. The jury was charged that afternoon, but did not reach a verdict as to Count Four by the end of the day on Friday, so the District Court adjourned the jury's deliberations until Monday, July 18.

On Monday morning, one of the jurors wrote a note to the court explaining that she had a nightmare over the weekend about potential retribution for her jury service and describing how the trial was causing her fear and anxiety. This emotional reaction was tied to a robbery that happened some time ago, she said. The resulting fear was significant enough that she sought to be excused from the jury.

The court determined to dismiss the juror. Walker then sought to have the jury's verdict from the first phase of the trial set aside in light of the excused juror's participation. The District Court denied the motion, noting that the juror had the nightmare over the weekend, *after* the jury delivered its verdict on the first three counts. Later on Monday afternoon, the remaining eleven members of the jury convicted Walker on Count Four.

## IV.    Sentencing

When Walker was sentenced almost two years after his conviction, two motions were pending before the District Court. One was a Rule 33 motion for a new trial asserting that law enforcement destroyed exculpatory portions of the surveillance

10

video, assailing the District Court's instruction to the jury that Hobbs Act Robbery is a crime of violence, and making arguments about the excused fearful juror. The second was a Rule 29 motion for a judgment of acquittal on Count Two (the violence-in-Hobbs Act robbery count), arguing that it was duplicative of Count One (the Hobbs Act robbery count). The District Court denied the first motion but granted the second, reasoning that Counts One and Two were duplicative because "violence in furtherance of Hobbs Act Robbery necessarily requires proof of the same elements as Hobbs Act Robbery." App'x 1183.

Turning at last to the sentence itself, the court sentenced Walker to time served on each count except Count Three (the firearm-in-crime-of-violence count), which carried a ten-year mandatory minimum sentence. In imposing that ten-year sentence, the District Court determined that the ACCA's enhanced penalty provision—which sets a fifteen-year mandatory minimum sentence if, at the time a defendant violates 18 U.S.C. § 922(g), he has three or more prior convictions for violent felonies, *see* 18 U.S.C. § 924(e)(1)—did not apply. Walker's prior convictions include a 1991 conviction for Robbery in the Second Degree under New York law; a 1999 conviction for Strong Arm Robbery under South Carolina law; and a 2011 conviction for Aiding and Abetting Assault under federal law. The court concluded that New York Robbery in the Second Degree did not constitute a violent felony under the ACCA, leaving Walker without the minimum three violent felony convictions that would have triggered the fifteen-year mandatory minimum sentence. The court explained that it did not "review [Walker's] other possible predicate convictions" because it did not think that it needed to do so. App'x 1191.

Walker and the government timely noticed their appeals.

11

**DISCUSSION**

On appeal, Walker reiterates the arguments that he made to the District Court and that we described above. We address each of his challenges in turn before considering the government's claim that the District Court twice erred in its sentencing determination.

## I.     Conviction on Count Three, the Firearm-in-Crime-of-Violence Count[3]

Walker first suggests that the District Court erred by denying his motion to dismiss Count Three. Walker premised his motion on the theory that Hobbs Act robbery "categorically fails to constitute a crime of violence" under 18 U.S.C. § 924(c). Appellant's Br. at 32-37; *see also* Appellant's Reply Br. at 6-16. He advances this argument notwithstanding his concession, *see* Appellant's Br. at 32-34, that our Circuit has now ruled that Hobbs Act robbery qualifies, categorically, as a crime of violence under the elements clause of 18 U.S.C. § 924(c). *See Hill*, 890 F.3d at 53, 60 ("[W]e agree with all of the circuits to have addressed the issue, and hold that Hobbs Act robbery has as an element the use, attempted use, or threatened use of physical force against the person or property of another."); *see also United States v. Barrett*, 937 F.3d 126, 128 (2d Cir. 2019) (stating that Hobbs Act Robbery "can be identified as a crime of violence

---

[3] We review *de novo* the District Court's denial of Walker's motion to dismiss Count Three. *United States v. Greenberg*, 835 F.3d 295, 305 (2d Cir. 2016). As to Walker's challenge to the jury instructions given in connection with that count, the parties disagree on the applicable standard of review: The government points out that Walker did not object to the jury instructions below, *see* Gov't Br. at 30 n.8, and argues that this Court should therefore review this issue for plain error, *see United States v. Vilar*, 729 F.3d 62, 70 (2d Cir. 2013). Walker maintains, however, that the Court should review the jury instructions *de novo*, urging that "the government was on notice regarding the issue because Walker moved to dismiss the 924(c) count." Appellant's Br. 38. We need not decide this question, however, because Walker's claim fails under either standard.

12

under § 924(c)(3)(A) applying the traditional, elements only, categorical approach"). Because "prior opinions of a panel of this court are binding upon us in the absence of a change in the law by higher authority or our own in banc proceeding (or its equivalent)," *United States v. Moore*, 949 F.2d 68, 71 (2d Cir. 1991), *Hill* controls this case. The District Court correctly recognized that *Hill* was controlling and denied Walker's motion to dismiss Count Three on this ground.

Walker's challenge to the District Court's jury instructions on Count Three rests on the same mistaken argument: that Hobbs Act robbery is not a crime of violence under 18 U.S.C. § 924(c). Thus, we identify no error in the District Court's jury instructions.[4]

## II.     Conviction on Count Four, the Felon-in-Possession Count

Several weeks before the scheduled oral argument on this appeal, we granted Walker's motion for leave to file supplemental briefing on the question whether the Supreme Court's decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), compels

---

[4] In suggesting that the District Court "charged that the jury could find Walker conspired to commit or committed the Hobbs Act robberies," Appellant's Br. at 38, Walker misstates the record. Although the District Court read aloud from the indictment the text of the statutory provision charged, which criminalizes conspiracy, the court explicitly instructed the jury that it could convict Walker only if it found the government had proved beyond a reasonable doubt "that Mr. Walker knowingly obtained or took the personal property of another, the owner of the store, and that includes money and other tangible and intangible things of value capable of being possessed and transferred from one person to another which would include cigarettes or things of that nature." App'x 1042.

reversal of his conviction on Count Four. We directed both parties to make submissions addressing the issue.[5] *See* Dkt No. 120.

In his supplemental submission, Walker urges that *Rehaif* has several important effects. In his view, it means (1) that the District Court lacked jurisdiction over his prosecution on Count Four because the indictment does not allege that he knew he belonged to the relevant category of persons barred from possessing ammunition (*i.e.*, that he knew he had been convicted of a "crime punishable by imprisonment for a term exceeding one year," 18 U.S.C. § 922(g)(1)). Therefore, he contends, the indictment does not allege all the statutory elements of a § 922(g) offense. Further, he says, *Rehaif* means (2) that his conviction violated his due process rights because the government did not prove that he knew he was a felon. Finally, he urges that *Rehaif* requires us to find (3) that the District Court erred by failing to instruct the jury that it was required to find that Walker had knowledge of his status.

The parties agree that plain error review applies. On plain error review, we consider whether "(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Miller*, 954 F.3d 551, 557-58 (2d Cir. 2020).

Walker's jurisdictional argument is foreclosed by our decision in *United States v. Balde*, 943 F.3d 73, 92 (2d Cir. 2019), in which we held that an "indictment's failure to allege that [a defendant] knew that he was [in a prohibited category, *e.g.*, a felon] . . .

---

[5] The Supreme Court issued its decision in *Rehaif* on June 21, 2019—nearly three months before Walker filed his reply brief on September 19, 2019. We nevertheless granted his motion, filed on November 18, 2019, to submit additional briefing discussing *Rehaif*.

was not a jurisdictional defect." With respect to his two remaining arguments, we have little difficulty in concluding that he cannot satisfy the final prong of the plain error standard—requiring him to show that the error seriously affects the fairness, integrity, or public reputation of judicial proceedings—because evidence available to the government for use at trial indicates persuasively that Walker was well aware of his status as a felon. That evidence includes Walker's conviction of at least five prior felonies, including, most notably, an earlier conviction for being a felon in possession of a firearm, and his prior sentences, four of which resulted in terms of imprisonment exceeding one year. [6] Under circumstances such as these, "we do not think that rejecting [Walker's] argument will seriously affect the fairness, integrity, or public reputation of judicial proceedings. To the contrary, we think accepting it would have that effect." *Miller*, 954 F.3d at 559.

We therefore conclude that the District Court had jurisdiction over Count Four, that Walker's conviction on this count did not violate his due process rights, and that the erroneous related jury instructions did not amount to plain error requiring reversal. *See generally id.* at 557-60.

---

[6] As we have explained, "[m]ost defendants charged with violations of § 922(g)(1) avail themselves of" the Supreme Court's decision in *Old Chief v. United States*, 519 U.S. 172 (1997), "in order to keep the nature and details of their prior felony convictions from the jury." *Miller*, 954 F.3d at 559 n.23. They stipulate to their qualifying status, as Walker did in his case, the result being that "the trial record . . . contain[s] limited evidence regarding the defendant's knowledge of his felon status." *Id.* at 559 & n.23. Accordingly, "in the limited context of our fourth-prong [of the plain error test] analysis, we will consider reliable evidence in the record on appeal that was not part of the trial record," including presentence investigation reports. *Id.* at 560.

## III.    Evidentiary Rulings

Walker argues that the District Court abused its discretion by: (1) permitting the government to introduce certain fingerprint evidence; (2) allowing Probation Officer Parris to identify, in court, Walker as appearing on video surveillance footage of the robbery; (3) admitting into evidence the robbery victim's testimony to his out-of-court identification of Walker; and (4) precluding Walker from cross-examining Almontaser about Almontaser's prior domestic violence convictions. On this basis, Walker urges that his convictions must be vacated.

We review a district court's evidentiary rulings for abuse of discretion. *United States v. Boles*, 914 F.3d 95, 109 (2d Cir. 2019). A district court abuses its discretion when it acts "arbitrarily or irrationally," *United States v. Nektalov*, 461 F.3d 309, 318 (2d Cir. 2006), or premises its decision on an error of law, *United States v. Figueroa*, 548 F.3d 222, 226 (2d Cir. 2008). Further, "even when an evidentiary ruling is manifestly erroneous, the defendant will not receive a new trial if admission of the evidence was harmless." *United States v. Siddiqui*, 699 F.3d 690, 702 (2d Cir. 2012).

### A.    Fingerprint Evidence

Walker contests the admission of certain fingerprint evidence because, he argues, the government was negligent in fulfilling its discovery obligations and that negligence led to an inexcusably late disclosure to him of the fingerprint evidence. The reader will recall that the evidence concerned the presence of a fourth fingerprint on a carton of cigarettes and Detective Lezcano's identification of the print as belonging to Walker.

As a general rule, "[a] district court's decision not to exclude evidence that was the subject of a Rule 16(a) [of the Federal Rules of Criminal Procedure] violation is not

16

grounds for reversal unless the violation caused the defendant substantial prejudice."[7] *United States v. Lee*, 834 F.3d 145, 158 (2d Cir. 2016). To prove substantial prejudice, "the defendant must demonstrate that the untimely disclosure of the [evidence] adversely affected some aspect of his trial strategy." *Id.* Walker maintains that his trial counsel had "assembled a defense for trial that was predicated on a misidentification theory," and that "[t]he sudden introduction of new fingerprint evidence significantly[,] and, unfairly, undermined" that strategy. Appellant's Br. at 41. We are not persuaded.

That the admitted fingerprint evidence damaged Walker's defense does not mean its admission resulted in substantial unfair prejudice to him under *Lee*; he must also show that its admission affected his trial strategy. *United States v. Miller*, 116 F.3d 641, 681 (2d Cir. 1997). This he cannot do. The record establishes that Walker "was not prevented from pursuing his strategy of claiming" misidentification, *id.*; to the contrary, misidentification was the defense he presented to the jury, *see* App'x 279-85 (arguing that, while Walker "was at home, somebody else was going into that store"); *see also* App'x 923-58. Moreover, the government's case against Walker was strong even without the fingerprint: The robbery was captured on video, and multiple witnesses identified Walker as the robber. *Cf. Lee*, 834 F.3d at 158-61 (explaining that late admission of defendant's post-arrest statement did not "substantially prejudice the defense so as to require reversal" where the government generally put on a strong case and so the conviction did not hinge on the challenged post-arrest statement).

---

[7] Although Walker's claim is premised on the notion that the government violated Federal Rule of Criminal Procedure 16, regarding required government disclosures, the District Court did not establish a discovery schedule in this case that the government could have violated.

Further, when the government violates Rule 16, the "district court has broad discretion in fashioning a remedy," *id.* at 158, including by granting the defense a continuance, *see* Fed. R. Crim. P. 16(d)(2)(B). That was the course adopted by the District Court here: After discovery of the fingerprint evidence, it offered Walker a lengthy continuance as well as a *Daubert* hearing to allow the defense to seek exclusion of the fingerprint evidence on reliability grounds. Walker declined both invitations. He insists that a continuance was an insufficient remedy because it would have interfered with his liberty interest and right to speedy trial. But when previously given the opportunity to proceed quickly to trial, Walker declined, and he willingly waived his right to speedy trial and requested adjournments many times during the trial preparation process. These decisions seriously undermine his claim that a continuance was inadequate to address any harm.

Finally, we note that the District Court went to great lengths to mitigate any prejudice to Walker arising from the late disclosure and admission of the fingerprint evidence: It precluded the government from calling the fingerprint expert whom Walker had hired to conduct a separate analysis of the fingerprint and who had reached the same conclusion as the government's expert (*i.e.*, that the fourth fingerprint was a match for Walker's), and it allowed Walker to attack the reliability of the fingerprint evidence through the testimony of a separate, additional expert. In sum, Walker was not substantially prejudiced by the fingerprint evidence and the court did not abuse its discretion in admitting it.

B.    In-Court Identification

Next, Walker contends that his probation officer should not have been permitted to testify that Walker was the man whose image appeared in surveillance video footage

18

of the robbery, both because that testimony was cumulative of other identification testimony and because the jury was capable of making the identification itself. Neither argument is convincing.

Rule 701 of the Federal Rules of Evidence permits lay opinion testimony that is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." *See also United States v. Yannotti*, 541 F.3d 112, 125 (2d Cir. 2008) (explaining that "[a] rational perception is one involving first-hand knowledge or observation"). Where the jury is "in as good a position as the witness to draw the inference" to which the opinion relates, the opinion is not helpful and should not be admitted. *United States v. Rea*, 958 F.2d 1206, 1216 (2d Cir. 1992). On the other hand, where an opinion is the result of factors not otherwise possessed by or communicated to the jury, lay opinion testimony is likely to be helpful. *See id.*

According to Walker, "[t]he robber did not disguise his appearance and was clearly visible on the surveillance video," which "showed clear and complete views of the offender's full face, head, hands and gait." Appellant's Br. at 44-45. Walker further represents that, at the time of the trial, his own "appearance had not substantially changed since the robbery." Appellant's Br. at 45. His assertions are belied, however, by the trial testimony, and were accordingly rejected by the District Court: the court found that the robber wore a black hooded sweatshirt, with the hood up much of the time, *see* App'x 333-60; the robber was not wearing glasses in the video, whereas Walker wore glasses throughout trial, *see* App'x 313; as Walker's own trial counsel also observed, the man who committed the robbery was "at least fifty pounds heavier than Mr. Walker,"

19

App'x 279; and "the video is not as crystal clear as [Walker] suggest[s]," including because "[e]verybody is hurried and harried," App'x 167. Walker's probation officer, on the other hand, who provided testimony on the identification, had spent many hours with Walker leading up to the time of the robbery and had the opportunity to observe physical traits such as his gait, which were on display in the surveillance video but not at trial. Given these circumstances, the District Court did not abuse its discretion in admitting the testimony on the ground that the probation officer's opinion was likely to be helpful to the jury.

Walker also maintains that his probation officer's testimony "carried a high risk of unfair prejudice that substantially outweighed its limited probative value," and so should have been excluded under Rule 403 of the Federal Rules of Evidence. Appellant's Br. at 46-47. We have not had occasion to consider this somewhat thorny question in a published opinion, but, as other circuits have recognized:

> Identification testimony from law enforcement or corrections personnel may increase the possibility of prejudice to the defendant either by highlighting the defendant's prior contact with the criminal justice system, if the witness's occupation is revealed to the jury, or by effectively constraining defense counsel's ability to undermine the basis for the witness's identification on cross-examination, if the witness's occupation is to remain concealed.

*United States v. Pierce*, 136 F.3d 770, 776 (11th Cir. 1998); *accord United States v. Pace*, 10 F.3d 1106, 1114-16 (5th Cir. 1993). Critically, however, courts have not found that admission of such testimony was an abuse of discretion where the district court "directed the government not to delve into the circumstances of the parole officers' relationships with the defendant," leaving to the defendant the decision whether to reveal his criminal history as the basis for the relationship. *United States v. Farnsworth*,

20

729 F.2d 1158, 1161 (8th Cir. 1984); *accord United States v. Contreras*, 536 F.3d 1167, 1171-72 (10th Cir. 2008); *United States v. Beck*, 418 F.3d 1008, 1013-15 (9th Cir. 2005); *United States v. Garrison*, 849 F.2d 103, 107 (4th Cir. 1988).

We think our sister Circuits that we have cited saw the risk of such testimony, but we also think it within a district court's discretion to manage that risk. Thus, we place great weight on the District Court's instruction to counsel here that Walker's probation officer not be identified as a probation officer (*i.e.*, her profession was not to be mentioned), and the fact that the government complied with this instruction. Nor did the government elicit any testimony about Walker's criminal history in connection with the probation officer's testimony. Walker was free to cross-examine his probation officer about the nature of their relationship (to attempt to show, for example, that she was biased against him, or for any other reason), but chose not to do so. *Cf. Farnsworth*, 729 F.2d at 1162 ("The defendant himself chose to avoid an extensive cross-examination as a matter of strategy.").

Because of the practical constraints on a defendant's cross-examination in these circumstances, courts must carefully consider whether to allow lay opinion identification by probation officers. *See generally United States v. Calhoun*, 544 F.2d 291, 296 (6th Cir. 1976) ("The knowledge that [a defendant] was on parole at the time of the alleged offense could also arouse an emotional reaction among the jurors, especially those who harbor strong feelings about recidivism and the premature release of those in prison for crimes."). But where, as here, the probation officer's identification testimony was highly probative, and the record does not appear to contain other adequate identification testimony, a district court does not abuse its discretion in allowing the probation officer to testify and imposing related limitations to mitigate associated risks.

C.    Out-of-Court Identification

Walker contends that the admission of Almontaser's out-of-court identification of Walker in a photographic array was unduly prejudicial because: even non-suggestive photo arrays such as those at issue here have "long been known to be hazardous"; the identification occurred one month after the robbery, which is "a considerable amount of time"; and the NYPD displayed "Crime Stoppers" posters with a photograph of Walker that had been taken independently of the robbery, a circumstance that could have tainted Almontaser's recollection if he saw the posters. Appellant's Br. at 48-49. We do not find his arguments persuasive.

We have long allowed admission of photo-array identifications. *See United States v. Anglin*, 169 F.3d 154, 161 (2d Cir. 1999) ("An unbroken line of our decisions . . . permits use of a non-suggestive photo array for identification purposes and trial testimony based upon that identification."). Like other courts, ours has criticized the single-photograph procedure, *see Mysholowsky v. New York*, 535 F.2d 194, 197 (2d Cir. 1976); *see also Simmons v. United States*, 390 U.S. 377, 383-84 (1968), but here, the victim was shown an array of six similar-looking people and was told that the perpetrator of the robbery might not be included in the array, *see* App'x 361-63, 448-49.

Further, we have never suggested that the passage of a month's time between a crime and a subsequent photo identification is too lengthy to permit its use at trial. We see no reason to suggest such a rule here, where the record provides no basis to conclude the victim's memory had faded: To the contrary, Almontaser testified that he had seen, and interacted with, Walker several times before the robbery; he described the robber to the police, including noting that the robber had gold teeth; and, in the photo array identification, he selected an individual whose characteristics matched the

description he gave to the officer (a male whose teeth included some that were gold). *See* App'x 408, 445, 497. This proved to be Walker.

The same rationale applies to Walker's complaint about possible taint arising from the Crime Stoppers fliers: Almontaser described the robber to law enforcement on the day of the robbery; he then identified Walker consistent with that initial description. Walker had the opportunity to cross-examine Almontaser to highlight the weaknesses he now asserts, but he chose not to do so. *Cf. Simmons*, 390 U.S. at 384 (explaining that cross-examination is a tool that may be used to determine whether identification is reliable). In any event, any error in admitting this testimony does not provide grounds for a new trial in light of the video evidence and in-court identification of Walker as the robber. *See United States v. Cadet*, 664 F.3d 27, 32 (2d Cir. 2011) (explaining that "erroneous evidentiary rulings entitle a defendant to a new trial, unless the error was harmless").

D.     <u>Domestic Violence Convictions</u>

Finally, Walker asserts that the District Court erred by precluding him from cross-examining Almontaser about Almontaser's two prior convictions for domestic violence—one for felony attempted assault and one for misdemeanor attempted assault. *See* Fed. R. Evid. 609(a) (prior felony convictions "must be admitted, subject to Rule 403, . . . in a criminal case in which the witness is not a defendant" and prior misdemeanor convictions "must be admitted if the court can readily determine that . . . the crime required . . . a dishonest act or false statement").

District courts have broad discretion to impose reasonable limits on cross-examination based on, *inter alia*, unfair prejudice or marginal relevance. *See* Fed. R. Evid. 403; *Figueroa*, 548 F.3d at 227. Explaining its decision to preclude this evidence,

23

the District Court commented that "[i]t is dubious whether the convictions are relevant as assault does not shed light on veracity." App'x 224. The court further concluded that mention of the convictions would be unduly prejudicial because "[d]omestic violence is a disturbing issue." App'x 224-25. This rationale is consistent with our precedent establishing that violent crimes, however abhorrent, often are not crimes of dishonesty, and may not meaningfully reflect on a witness's truthfulness. *See United States v. Estrada*, 430 F.3d 606, 617-19 (2d Cir. 2005) (discussing "rule of thumb" that "convictions which rest on dishonest conduct relate to credibility whereas those of violent or assaultive crimes generally do not").

Walker does not present any arguments that the domestic violence convictions were relevant to Almontaser's truthfulness or that their admission would not be unduly prejudicial. Instead, he observes that the Federal Rules of Evidence distinguish between prior convictions of defendants and those of witnesses. True enough. The District Court, too, recognized that distinction and then appropriately performed a Rule 403 balancing test. On the facts presented here, we find no merit in Walker's claim that the District Court abused its discretion in limiting cross-examination as it did. And in any event, any potential error was harmless considering the District Court allowed Walker to impeach Almontaser by asserting that he was a drug-dealer, in support of Walker's alternative narrative that the encounter between Walker and Almontaser was not a robbery but a drug deal gone bad. *See United States v. Flaharty*, 295 F.3d 182, 191 (2d Cir. 2002).

## IV. Rule 33 Motion

With respect to his motion for a new trial, Walker reasserts on appeal the arguments he made in the District Court.[8] We find those arguments no more persuasive than did that court.

Rule 33(a) of the Federal Rules of Criminal Procedure provides that, on "the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." In determining whether to grant a Rule 33 motion, "[t]he ultimate test is whether letting a guilty verdict stand would be a manifest injustice." *United States v. Canova*, 412 F.3d 331, 349 (2d Cir. 2005). A court must have "a real concern that an innocent person may have been convicted" in light of the evidence presented and the credibility of the witnesses. *Id.* District courts have notably broad leeway in ruling on such motions and we review a district court's denial of a motion under Rule 33 for abuse of discretion. *United States v. Vinas*, 910 F.3d 52, 58 (2d Cir. 2018).

### A. Spoliation

The thrust of Walker's spoliation argument derives from the serious accusation that either Almontaser or the police "destroyed parts of the [surveillance] video" that "could have provided a key to understanding what actually transpired between [Almontaser] and his assailant, including the nature of their relationship, and if this was

---

[8] Walker again argues that the indictment did not charge any "crimes of violence" and therefore Count Three (the firearm-in-crime-of-violence count) should have been dismissed and his conviction on that count overturned for failure to state a claim. This attack does no more than repackage his arguments that Hobbs Act Robbery is not a crime of violence. As discussed, those arguments have no merit.

25

a robbery at all." Appellant's Br. at 53-54. Walker specifically references "28 seconds from an outside surveillance video that begins to show what transpired immediately between the perpetrator and [the victim] after the 'robbery,'" but that was unavailable for unknown reasons. Appellant's Reply Br. at 21.

This Court has defined spoliation to be "the destruction or significant alteration of evidence, or failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *United States v. Odeh (In re Terrorist Bombings of U.S. Embassies in E. Africa)*, 552 F.3d 93, 148 (2d Cir. 2008). Even when the government is under an obligation to preserve relevant recordings, which it may well have been here, where a defendant "has pointed to no evidence that the tapes were intentionally destroyed," their destruction "could not have amounted to spoliation." *Id.* Similarly, in the context of a motion to dismiss an indictment for spoliation, we have held that a criminal defendant must show: (1) "that the evidence possessed exculpatory value that was apparent before it was destroyed"; (2) that the evidence "was of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means"; and (3) "bad faith on the part of the [g]overnment." *Greenberg*, 835 F.3d at 303. The "[f]ailure to satisfy any of these requirements, including a failure to show the Government's bad faith, is fatal to a defendant's spoliation motion." *Id.*

Walker does not assert that he knows what the missing video footage contained, let alone that the missing footage was exculpatory other than insofar as it portrayed a further brief interaction between the robber and the victim. Indeed, the footage Walker references pertains to the moments *after* the robbery was completed, and Walker does not explain what kind of events recorded then could possibly exculpate him. Nor does the record support a finding or even a suspicion that the missing footage was

26

unavailable as a result of any bad faith, or an unintentional or even negligent act of destruction on the part of the government. Accordingly, we have no basis for concluding that the District Court abused its discretion in denying Walker's motion for a new trial based on his speculations about spoliation.

B.    Impaired Juror

Walker also contends that the District Court abused its discretion when—rather than declaring a mistrial—it decided to dismiss a juror who advised the court that she had a nightmare after the close of the first phase of the trial, before the first set of verdicts was reached. He asserts that the episode reflects bias on the part of the excused juror, and therefore indelible taint in the proceedings leading up to her dismissal.

Rule 23(b)(3) of the Federal Rules of Criminal Procedure authorizes the court to "permit a jury of 11 persons to return a verdict, even without a stipulation by the parties, if the court finds good cause to excuse a juror." We review for abuse of discretion a district court's handling of juror dismissal, just as we do its denial of a Rule 33 motion. *United States v. Farhane*, 634 F.3d 127, 168 (2d Cir. 2011).

The District Court acted well within its discretion in denying Walker's motion for a new trial on the basis of the excused juror's hypothetical bias. The court reasonably considered the possibility of bias and found none, concluding that Walker was not, and had not been, harmed by the excused juror's participation to that point. The juror stated under oath that she had been reminded of a long-ago robbery only after deliberations for the first phase of the trial had concluded and the verdict was announced; she had reported her concerns at the earliest possible opportunity; and she averred that she had not mentioned her dream to any of the other jurors. As the Supreme Court has explained, "the Constitution does not require a new trial every time a juror has been

27

placed in a potentially compromising situation." *Rushen v. Spain*, 464 U.S. 114, 118 (1983). We see no basis to conclude that the District Court abused its discretion in its handling of this juror.

## V.    Sentence

We turn finally to the government's cross-appeal of the District Court's determination that the ACCA's enhanced penalty provision does not apply to Walker. This Court "review[s] de novo all questions of law relating to the district court's application of a federal sentence enhancement." *United States v. Beardsley*, 691 F.3d 252, 257 (2d Cir. 2012).

Since Walker's sentencing, we have ruled—and Walker now concedes, as he must—that New York Robbery in any degree is a violent felony, both for purposes of 18 U.S.C. § 924(e)(2)(B)(i) and under an identical clause in the U.S. Sentencing Guidelines, U.S.S.G. § 2L1.2. *United States v. Thrower*, 914 F.3d 770, 774-77 (2d Cir. 2019) (18 U.S.C. § 924(e)(2)(B)(i)); *United States v. Pereira-Gomez*, 903 F.3d 155, 159, 164-66 (2d Cir. 2018) (Guidelines). We therefore remand to the District Court so that it may decide whether Walker's two other convictions qualify as violent felonies under the ACCA and for resentencing.

### CONCLUSION

Accordingly, the judgment of conviction entered by the District Court hereby is **AFFIRMED** and the cause is **REMANDED** for further proceedings consistent with this Opinion.