23-6760-cr (L)
*United States v. Rallo (Prosano)*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 28th day of January, two thousand twenty-six.

PRESENT:
>DENNIS JACOBS,
>JOSÉ A. CABRANES,
>RAYMOND J. LOHIER, JR.,
>>*Circuit Judges*.

-----------------------------------------------------------------

UNITED STATES OF AMERICA,

>*Appellee*,

>v.                                                               Nos. 23-6760(L), 23-8115(Con)

THOMAS LIBERATORE, PAUL PROSANO, AKA TONY PRO,

>*Defendants-Appellants*,

ROBERT RALLO,

*Defendant.**

------------------------------------------------------------------

FOR DEFENDANT-APPELLANT PROSANO:

Randall D. Unger, Kew Gardens, NY.

FOR DEFENDANT-APPELLANT LIBERATORE:

BEVERLY VAN NESS, New York, NY.

FOR APPELLEE:

JOCELYN COURTNEY KAOUTZANIS, Assistant United States Attorney (Conor M. Reardon, Elena Lalli Coronado, Assistant United States Attorneys, *on the brief*), *for* David X. Sullivan, United States Attorney for the District of Connecticut, New Haven, CT.

Appeal from judgments of the United States District Court for the District of Connecticut (Kari A. Dooley, *J.*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgments of the District Court are **AFFIRMED**.

Defendants-Appellants Thomas Liberatore and Paul Prosano were convicted after a jury trial of (in Liberatore's case) committing and (in Prosano's

---

* The Clerk of Court is respectfully directed to amend the case caption as indicated above.

2

case) aiding and abetting a Hobbs Act robbery in violation of 18 U.S.C. § 1951(a) and 18 U.S.C. § 2, and of interstate transportation of stolen property in violation of 18 U.S.C. § 2314. Liberatore was separately also convicted of firearm-related murder in violation of 18 U.S.C. § 924(j)(1) and 18 U.S.C. § 2. Both Prosano and Liberatore appeal their convictions, and Prosano also challenges his sentence. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal, which we reference only as necessary to explain our decision to affirm.

This case arose out of the armed robbery of Marco Jewelers in Stamford, Connecticut, and the murder of the store's owner, Mark Vuono, on March 28, 2020. Evidence at trial detailed that Liberatore, Prosano, and Defendant Robert Rallo met on the morning of the robbery and drove to Stamford. Video footage recovered from the jewelry store shows Rallo and Liberatore entering the store where Vuono was at work. Rallo brandished a handgun, and Vuono reached for a revolver. Rallo fought with Vuono in the back room of the store while Liberatore stole jewelry in the front showroom. Rallo beat Vuono and shot him in the head. Rallo and Liberatore escaped into a car driven by Prosano. The Defendants were tied to the robbery and murder via video surveillance as well as

3

eyewitness testimony, cell phone extractions, DNA evidence, ballistics evidence and expert testimony, cell site evidence, photographs, and the recovered jewelry. Rallo pleaded guilty, while Liberatore and Prosano were convicted at trial on all counts.

**1.** Liberatore first argues that his Confrontation Clause rights were violated by the ballistic examiner's trial testimony that a second, uncalled examiner reviewed her findings and reached the same conclusion. Relying on out-of-circuit cases, he contends that a forensic expert may not testify that a nontestifying expert corroborated her analysis through a quality control process. We review for plain error because Liberatore did not raise this objection at trial. *Greer v. United States*, 593 U.S. 503, 507-08 (2021). However, "[f]or an error to be plain, it must, at a minimum, be clear under current law, which means that we typically will not find such error where the operative legal question is unsettled, including where there is no binding precedent from the Supreme Court or this Court." *United States v. Napout*, 963 F.3d 163, 183 (2d Cir. 2020) (internal quotation marks, citation, and alterations omitted). As noted, Liberatore does not point us to such binding precedent, and he also advances no sufficient reason to depart from the rule.

4

**2.** Liberatore next argues that the trial testimony of three law enforcement officers was improper lay testimony. Liberatore objects in particular to testimony by Stamford Police Department Sergeant Sean Boeger and FBI Special Agent Andrew Pappas describing the robbery as depicted in the video footage and testifying to what could have been seen and heard from where Liberatore stood during the robbery. Sergeant Boeger testified about arriving at the scene and collecting video evidence. He provided context to the video of the robbery, captured from different camera angles throughout and around the store. He testified that a person at the jewelry counter could see into the back room, which was offered to show that Liberatore knew that Rallo was armed during the robbery. As videos of the robbery were played for the jury, Agent Pappas described what was happening on screen and provided context based on having met the Defendants and having been inside the jewelry store several times. Agent Pappas estimated that the distance from the jewelry counter to the back room is "a matter of feet." *Gov't App'x* at 1540. From this, he testified that someone behind the counter would be able to see into the back room. *Id.*

Federal Rule of Evidence 701 limits opinion testimony by a lay witness to testimony that is "(a) rationally based on the witness's perception; (b) helpful to

clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Fed. R. Evid. 701.  Because Liberatore failed to raise this Rule 701 objection to the testimony of Agent Pappas and Sergeant Boeger at trial, we review for plain error.  *Greer*, 593 U.S at 507-08.

Agent Pappas's and Sergeant Boeger's testimony about the crime footage was based on their observations at the crime scene and on the ensuing investigation.  Their opinions "'result[ed] from a process of reasoning familiar in everyday life,'" and therefore "w[ere] permissible lay opinion testimony under Rule 701."  *United States v. Rigas*, 490 F.3d 208, 224 (2d Cir. 2007) (quoting Fed. R. Evid. 701, advisory committee's note to 2000 amend.) (alteration in original).  Admitting Agent Pappas's and Sergeant Boeger's respective testimony was not plain error.

Liberatore also objects to the testimony of Officer George Roper, his parole officer, arguing that it both was unnecessary to tie him to the robbery and exposed his prior criminal record.  When a defendant preserves his objection at trial, as Liberatore did here, we "review a district court's decision to admit evidence, including lay opinion testimony, for abuse of discretion."  *United States*

*v. Kaplan*, 490 F.3d 110, 117 (2d Cir. 2007). The government called Officer Roper "to identify the defendant from video evidence" of the jewelry store robbery. *Appellee Brief* at 54. District courts have "discretion to manage [the] risk" associated with certain law enforcement testimony, but we have held that a "probation officer" who "had spent many hours with [the defendant] leading up to the time of the robbery and had the opportunity to observe physical traits such as his gait, which were on display in the surveillance video but not at trial," may properly be called to identify the defendant from video evidence. *United States v. Walker*, 974 F.3d 193, 205-06 (2d Cir. 2020).

Although Officer Roper was instructed not to share his employment, at the outset of his testimony he identified himself as "Officer Roper" and began to say that he "work[s] for the Department of—" before being interrupted by the government. *Gov't App'x* at 994. But Officer Roper did not reveal that Liberatore was on parole. He described himself instead as a "business associat[e]" who "sort of supervised" Liberatore. *Id.* at 1003. The District Court also charged the jury that "you must not base your verdict on any perception that you may have that Mr. Liberatore or Mr. Prosano are of bad character or have a general propensity to commit crimes." *Id.* at 1635. Particularly in light of this curative

7

instruction, an officer's "inadvertent, ambiguous comment" connected to the defendant's "criminal histor[y]" does not warrant a new trial. *United States v. Fermin*, 32 F.3d 674, 677 (2d Cir. 1994). And here, the connection to Liberatore's criminal history was forestalled by the government.

**3.** Liberatore also invokes the cumulative error doctrine, which "comes into play only where the total effect of the errors found casts such a serious doubt on the fairness of the trial that the convictions must be reversed." *In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 93, 147 (2d Cir. 2008) (internal quotation marks omitted, alterations accepted). Since we identify no errors, that doctrine is inapplicable. *See id.* at 151.

**4.** Prosano challenges the denial of his Rule 29 motion, arguing insufficiency of evidence. We review this claim de novo, *United States v. Mi Sun Cho*, 713 F.3d 716, 720 (2d Cir. 2013) (per curiam), but must affirm if "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Musacchio v. United States*, 577 U.S. 237, 243 (2016).

Prosano argues that his conviction should be vacated because of a lack of direct evidence that he was involved in the planning of the charged robbery or that he knew what his co-defendants intended to do while he waited for them in

8

the car. We disagree. Circumstantial evidence connected Prosano to the violent robbery before, during, and after it was committed. Prosano was in contact with Rallo and Liberatore in the weeks leading up to the crime. His cell phone accessed a news story about another local jewelry robbery committed by Liberatore just days before. Prosano's wife testified that the day before the robbery, Prosano announced his plan to get up early to help Rallo with a paint job, which was out of character for him. Evidence showed that Prosano spent the morning of the crime driving around with Rallo and Liberatore, with video footage of the trio buying food and parking in a lot in Stamford where Liberatore and Rallo were seen changing clothes. After the robbery, they returned to New York in the getaway car and rented a hotel room together. Prosano's wife testified that when he arrived home after the robbery, she found a box of jewelry she had never seen before. Law enforcement recovered from Prosano's residence the stolen jewelry, a handgun with the victim's DNA, and a notebook full of Prosano's handwriting—including notes with phrases and tips about robbing a jewelry store. Viewing the evidence presented to the jury and laid out in the District Court's Order, "a rational trier of fact" could have made reasonable inferences from that evidence to "conclude[] that on March 28, 2020, Rallo,

Liberatore and Prosano, acting together, committed the armed robbery of Marco Jewelers." *Gov't App'x* at 1783 (Dist. Ct. Opinion at 11).

**5.** Prosano challenges the substantive reasonableness of his sentence, citing his mitigating factors and his "minor participation in the offense" as the getaway driver. *Appellant Brief* at 25. We review a sentence's "substantive reasonableness under a deferential abuse-of-discretion standard." *United States v. Hunt*, 82 F.4th 129, 142 (2d Cir. 2023) (internal quotation marks omitted). A sentence is substantively unreasonable if it "cannot be located within the range of permissible decisions." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (internal quotation marks omitted). "[O]nly those sentences that are so 'shockingly high, shockingly low, or otherwise unsupportable as a matter of law' that allowing them to stand would 'damage the administration of justice'" are substantively unreasonable. *United States v. Broxmeyer*, 699 F.3d 265, 289 (2d Cir. 2012) (quoting *United States v. Rigas*, 583 F.3d 108, 123 (2d Cir. 2009)).

The sentence was not an abuse of discretion. Thirty years' imprisonment was within Prosano's United States Sentencing Guidelines range: 240 months on the Hobbs Act robbery count and 120 months on the interstate transportation of stolen property count, to run consecutively, for a total of 360 months. Over the

government's objection, the court applied a two-level reduction to Prosano's offense level "for his lesser role in the offense." *App'x* at 104. Notwithstanding the reduction, the Guidelines range was life imprisonment, above the statutory maximum of 360 months, "and so, the Guidelines range becomes 360 months." *Id.* at 105.

The District Court then addressed Prosano's mitigating factors. The court acknowledged Prosano's age but noted that "most people, frankly, by the time they're 61 years old have decided to put criminal behavior in their rearview mirror. . . . And [Prosano] had not done that at the time of the offense." *Id.* at 118-119. The court also acknowledged Prosano's "significant health issues" and considered that they "will make any period of incarceration more difficult [] and harsher." *Id.* at 119. The court also acknowledged Prosano's "substantial mental health issues" that were diagnosed "at a very young age," but concluded that "it is difficult to find a direct path between those issues and those diagnoses and a life of violence that followed." *Id.* The court weighed these factors against the crime committed and Prosano's significant criminal history, noting that Prosano has left "a wake of victims in [his] past." *Id.* at 120. In sum, the court's

11

assessment of all these factors "under the totality of circumstances in the case"

supported the sentence issued. *Cavera*, 550 F.3d at 191.

We have considered the parties' remaining arguments and conclude they

are without merit. Accordingly, we **AFFIRM** the judgments of the District Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

12